UNITED STATES of America,
Plaintiff–Appellee,

v.

Leslie CARTER, Defendant–Appellant.

No. 93–5102.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 30, 1993.

Decided Jan. 31, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied March 18, 1994.

Joseph C. Murphy, Jr., Asst. U.S. Atty. (briefed), Christopher E. Cotten, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Memphis, TN, Daniel A. Clancy, Asst. U.S. Atty.,

Office of the U.S. Atty., Jackson, TN, for plaintiff-appellee.

Leslie Fatow (briefed), April R. Ferguson, Asst. Federal Public Defender (argued), Office of the Federal Public Defender, W.D. Tennessee, Memphis, TN, for defendant-appellant.

Before: KEITH, NELSON, and RYAN, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

This is an appeal from a conviction in a drug case. The defendant, a passenger in a motor vehicle that was found to contain several hundred pounds of marijuana, moved to suppress the marijuana evidence on the ground that the police had violated his Fourth Amendment rights by stopping the vehicle on a pretext and searching it without permission. The trial court denied the motion for want of standing, and a jury found the defendant guilty on possession and aiding-and-abetting charges. See 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

The defendant makes three arguments on appeal: (1) that although he was not in possession or control of the vehicle in which the marijuana was carried, he himself was detained illegally—and as an illegal detainee, he says, he had standing to contend that the marijuana ought to have been suppressed under the "fruit of the poisonous tree" doctrine; (2) that the court erred in admitting certain hearsay evidence under the co-conspirator exception to the hearsay rule; and (3) that the evidence against him was constitutionally insufficient to support a finding of guilt.

Without addressing the fruit-of-the-tree issue, the trial court concluded that the defendant lacked a reasonable expectation of privacy in the vehicle and thus lacked standing to challenge the search on the basis of any such expectation. We think that this conclusion, as far as it goes, is correct.

As to the fruit-of-the-tree argument, we have no doubt that the defendant had standing to challenge his own detention. His problem is that it was the arrest of the driver and the seizure of the driver's vehicle that led to the discovery of the marijuana, not any

violation of the defendant's rights. Evidence obtained by exploiting a violation of the driver's constitutional rights could not be used against the driver, but we do not believe that the fruit-of-the-tree doctrine precluded the use of such evidence against the passenger. Accordingly, and because we do not find the defendant's remaining contentions persuasive, we shall affirm the conviction.

I.

Memphis, Tennessee, police officers Charles Cox and Edward Hall were patrolling an interstate highway in Memphis at around 4:30 in the morning on Sunday, November 17, 1991, when a 1991 GMC van came by. The officers saw that instead of a normal license plate, the van displayed what looked like a temporary "drive-out" tag from North Carolina. The officers had no way to check the validity of the tag by radio, and they pulled the van over.

The driver, a man named Timmie Locklear, rushed out of the van and walked quickly back to the patrol car. At the request of one of the officers Locklear produced a driver's license and some paperwork showing that he had recently purchased the van. A radio check disclosed that the driver's license was valid, that there were no outstanding warrants in Locklear's name, and that the van had not been reported stolen.

Mr. Locklear, who sat in the back seat of the patrol car while the check was going on, told Officer Cox that he and a man who was traveling with him (defendant Leslie Carter) were returning from a week-long visit with Locklear's sister in Hope, Arkansas. Mr. Locklear said he did not know the name of the street on which his sister lived and did not know what direction he had taken once he got to Hope. Locklear spoke choppily and acted nervous, according to Officer Cox.

Officer Hall, meanwhile, had a roadside conversation with the passenger, defendant Carter. When Carter got out of the van, according to the officer, he kept trying to walk away from the vehicle. Officer Hall asked him to wait a minute and questioned him as to where he and the driver had been. Mr. Carter replied that they had been in

Arkansas—he could not say where, specifically—visiting a cousin. The trip had taken a day and a half, according to Carter.

Although the officers were suspicious about the stories they had been told, Officer Cox advised Mr. Locklear that he was free to leave. Before Locklear could get back in the van, however, the officer asked him if he would agree to let the vehicle be searched for contraband. Locklear refused. Stating that he would have to call a superior, Officer Cox then took Locklear by the arm and confined him, over protest, in the back of the patrol car.

The supervisor, a Lt. Prewitt, arrived soon thereafter and renewed the request for permission to search the van. It is undisputed that Mr. Locklear refused to sign a consent-to-search form. The lieutenant testified that after a few minutes of conversation, however, Locklear gave oral consent to a search. The magistrate judge who conducted the suppression hearing did not believe that oral consent was given; the magistrate found as a fact that Mr. Locklear never consented in any way to the search of his vehicle.

With or without Locklear's consent, the officers proceeded to search the van. When the back door of the vehicle was opened, they immediately smelled marijuana. The odor (which Officer Hall described as "very strong") emanated from five suitcases that proved to contain a total of 437 pounds of marijuana.

Locklear and Carter were both indicted by a federal grand jury. Each of the men subsequently filed a motion to suppress any and all evidence seized as a result of the search of Locklear's van. Although he had only been a passenger in the van, defendant Carter argued in a brief filed in support of his motion that he had agreed to accompany Locklear on a lengthy trip; that he (Carter) had taken toilet articles and a change of clothing with him in the van; that he had entertained an expectation of privacy in the vehicle throughout the duration of the trip; that the van had been stopped on a pretext, the real reason for the stop having been a desire to search for drugs; that he had been detained in violation of his Fourth Amendment rights; and that any consent to search the vehicle

"flowed from an illegal arrest and violated the 'fruits of the poisonous tree' doctrine."

Dealing first with defendant Carter's motion, which was filed more than a month before Locklear's, the magistrate conducted a hearing on the sole question whether Mr. Carter had standing to contest the search of the vehicle in which he was a passenger. Evidence presented at the hearing showed that Mr. Carter had no ownership interest in the van and no control over it; that he had no possessions in the van other than a change of clothes (a pair of jeans and a shirt) and a shaving kit found in the front of the vehicle; and that he claimed no possessory or other interest in the suitcases filled with marijuana.

In his report to the district judge the magistrate cited *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), for the proposition that in order to establish standing it was incumbent on Mr. Carter to prove that he had a legitimate expectation of privacy in the van or in the suitcases. Referring also to *United States v. Pino*, 855 F.2d 357 (6th Cir.1988), *cert. denied*, 493 U.S. 1090, 110 S.Ct. 1160, 107 L.Ed.2d 1063 (1990), the magistrate concluded that Mr. Carter had no legitimate expectation of privacy in either the van or the suitcases and thus lacked standing to assert that the search constituted a violation of his Fourth Amendment rights. It was recommended that Carter's motion to suppress be denied.

Mr. Carter filed a timely objection, confined to what he repeatedly characterized as "a very narrow and precise issue"—*i.e.*, whether a passenger has an expectation of privacy in a vehicle in which he has placed personal belongings for use in connection with a trip in the vehicle. Upon *de novo* review of the record, the district court adopted the magistrate's report and denied defendant Carter's motion to suppress.

Several weeks later the same magistrate issued a report on Timmie Locklear's motion to suppress. As the owner and driver of the van, the magistrate noted, Locklear unquestionably had standing to challenge the search. Because the magistrate found that Mr. Locklear never gave the officers consent

to search his vehicle, and because the magistrate did not understand the government to be contending that the officers had independent grounds for a search, it was recommended that Locklear's motion to suppress be granted. The magistrate went on to suggest that even if Mr. Locklear did give oral consent, the motion to suppress should still be granted. Mr. Locklear was arrested—without probable cause, as the magistrate determined—when he initially refused to let the van be searched. "[I]f there was a consent," the magistrate said, "it was obtained directly following, and directly as a result of, an illegal arrest.... The search, therefore, flowed directly from the illegal arrest."

After recommending that Locklear's motion to suppress be granted, the magistrate returned to the question of defendant Carter's standing to challenge the search. In this connection the report observed that "the result of suppressing the search for the driver and not the passenger is an unfortunate one, given that the progress of both driver and passenger [was] impeded by illegal actions of the police." The ruling already made by the court with regard to defendant Carter should nevertheless stand, the magistrate concluded, because of the precedent established by *Pino*, 855 F.2d 357, *supra*. In *Pino* too the validity of the initial traffic stop was an issue, the magistrate pointed out, yet the Sixth Circuit held that a passenger with no possessory interest in either the car or the container of contraband could not establish standing.

Defendant Carter filed no objection to the report on Locklear's motion. It is not clear to us that he was entitled to do so, however.

The government ultimately consented to dismissal of the indictment against Locklear; meanwhile, the case against defendant Carter went to trial. The district court never changed its ruling on Carter's motion to suppress. The jury heard evidence with respect to the 437 pounds of marijuana, and also heard evidence as to what Mr. Locklear had told police about the trip to Arkansas. The court admitted Locklear's statement, over objection, on the strength of findings that there had been a conspiracy, that Locklear was a co-conspirator, and that his statement was made in furtherance of the conspiracy. See Rule 801(d)(2)(E), Fed.R.Evid.

Denying a motion by defendant Carter for a judgment of acquittal, the district court sent the case to the jury. After deliberation, the jury returned a verdict of guilty on one count of possession of marijuana with intent to distribute it and one count of aiding and abetting such possession. The court sentenced Mr. Carter to imprisonment for 63 months, and this appeal followed.

## II.

■ As noted above, Mr. Carter's sole objection to the initial recommendation of the magistrate was based on the proposition that the presence in the van of Carter's shirt, pants and shaving kit gave him a legitimate expectation of privacy in the vehicle. There was no allusion, either in Carter's objection or in the district court's ruling, to the suggestion that the discovery of the marijuana had been the fruit of an unconstitutional detention of Mr. Carter himself. It is true that the magistrate addressed this suggestion in his report on Locklear's motion to suppress, but that report was not issued until several weeks after the district court had ruled on Carter's motion. It is far from obvious, therefore, that Mr. Carter has preserved his "fruit of the poisonous tree" argument for appeal. The government not having raised the issue, however, we shall treat the argument as being properly before us.

Mr. Carter's argument may be summarized as follows. In *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), as the Supreme Court explained in *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963), the Court held that "evidence seized during an unlawful search could not constitute proof against the victim of the search." The magistrate has left no doubt, in the case at bar, that Timmie Locklear, the owner and driver of the marijuana-laden van, was the victim of an illegal search. The search was illegal as to Locklear not only because it was conducted without probable cause and without Locklear's consent, but also because, as the magistrate found, any consent that may have

been given was the fruit of an illegal arrest. (The arrest in question, although Carter does not emphasize this point, occurred when Locklear was confined against his will in the back of the patrol car following his initial refusal to let his van be searched.)

Carter was the victim of an illegal detention as well, the argument continues, because "stopping an automobile and detaining its occupants constitutes a 'seizure' ... even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). A traffic stop "significantly curtails the 'freedom of action' of the driver *and the passengers*, if any, of the detained vehicle." *Berkemer v. McCarty*, 468 U.S. 420, 436, 104 S.Ct. 3138, 3148, 82 L.Ed.2d 317 (1984) (emphasis supplied). And if a traffic stop was unlawful, as the Court of Appeals for the Tenth Circuit observed in *United States v. Erwin*, 875 F.2d 268, 272 (10th Cir.1989)—a case where, as here, the defendant was a passenger in a vehicle driven by another—"the 'fruit of the poisonous tree' doctrine might dictate exclusion of the evidence discovered during the search." (As in a number of other cases cited by Carter, the conviction of the defendant was affirmed in *Erwin*; the language relied on was thus not essential to the court's holding.)

Mr. Carter refers also to *United States v. Durant*, 730 F.2d 1180 (8th Cir.), *cert. denied*, 469 U.S. 843, 105 S.Ct. 149, 83 L.Ed.2d 87 (1984). There a passenger in a car that had been stopped in the vicinity of a bank robbery was ordered out of the vehicle and frisked. The passenger could contest the legality of the stop and frisk, the Court of Appeals said, and "[a]ny evidence attained as a direct result of an illegal stop would be inadmissible under the 'fruit of the poisonous tree doctrine' of *Wong Sun* . . . ." *Id.* at 1182.

We have no quarrel with *Durant* and its progeny. A passenger, like anyone else, ob-

viously has a right not to be detained illegally. Like anyone else, moreover, a passenger has a legitimate expectation of privacy in his person and in the garments that he (or she, as in *Durant*) is wearing. The first piece of incriminating evidence found in *Durant*, a large roll of money, was discovered under the passenger's blouse—and it was this discovery that led to the search of the automobile. *Id.* The *Durant* court was clearly correct in stating, as it did, that "[l]ack of standing thus does not preempt [the passenger's] suppression argument. . . ." *Id.*[1]

It follows, in the case before us, that Mr. Carter had standing to challenge the legality of his detention by the police. And whether or not the original traffic stop was unconstitutional—an issue that was not preserved in Carter's objection to the magistrate's report and that we do not reach here—we shall assume, for purposes of analysis, not only that the subsequent arrest of the driver was unconstitutional, but also that the detention of Mr. Carter, if not illegal from the outset, became illegal when the driver was arrested.

It does not follow from any of this, however, that the discovery and seizure of the marijuana represented "fruit" of Mr. Carter's unlawful detention. Suppose that at the time of the driver's arrest the police had summoned a taxi cab for Mr. Carter and told him he was free to leave. The marijuana would still have been discovered, because it was located in a van owned and controlled by Mr. Locklear (who was not going anywhere until his vehicle had been searched) and not in a vehicle controlled by Mr. Carter.

The very case on which Mr. Carter relies for his fruit-of-the-poisonous-tree argument, *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, shows that the argument is unavailing. Here is why.

Locklear's counterpart in *Wong Sun* was a man named Toy. Like Locklear, Toy was the victim of an illegal arrest. As in Locklear's case, the illegal arrest of Toy led di-

---

1. *Cf. Rakas v. Illinois*, 439 U.S. at 139, 99 S.Ct. at 428: "[A]s a general proposition, the issue of standing involves two inquiries: first, whether the proponent of the particular legal right has alleged 'injury in fact,' and, second, whether the proponent is asserting his own legal rights and

interests rather than basing his claim for relief upon the rights of third parties." The *Durant* passenger was alleging an "injury in fact," and she was asserting her own legal rights and interests rather than basing her claim for relief upon the rights of the driver or another third party.

rectly to the discovery of drugs—and the Supreme Court held that the drugs were inadmissible against Toy. Mr. Wong Sun, the counterpart of Mr. Carter, had also been arrested illegally; neither Wong Sun's arrest nor the inadmissibility of the drugs in Toy's case made the drugs inadmissible against Wong Sun, however:

> "Our holding ... that this ounce of heroin was inadmissible against Toy does not compel a like result with respect to Wong Sun.
>
> \*    \*    \*    \*    \*    \*
>
> The seizure of this heroin invaded no right of privacy of person or premises which would entitle Wong Sun to object to its use at his trial." 371 U.S. at 491–92, 83 S.Ct. at 419–20.

This conclusion, which the Supreme Court supported with a reference to *Goldstein v. United States,* 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312 (1942), follows logically from the holding in *Weeks.* What the Court held there, as we have seen, was that "evidence seized during an unlawful search could not constitute proof against the *victim* of the search." *Wong Sun,* 371 U.S. at 484, 83 S.Ct. at 415 (emphasis supplied). Mr. Carter was not the "victim" of the search of Mr. Locklear's van. The detention of Carter was not the proximate cause of the search of the van, moreover, and Carter, as the magistrate correctly found, had no right of privacy that was invaded by the search. Although Mr. Locklear had such a right, it was a right personal to him: "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas,* 439 U.S. at 133–34, 99 S.Ct. at 425–26 (citing cases, including *Wong Sun* ). The result we reached in *United States v. Pino,* 855 F.2d 357, is entirely consistent with this analysis.

The briefs filed here by Mr. Carter do not press the contention that the presence of the shaving kit and change of clothing in the front of the van gave Carter a legitimate expectation that the police would not open the van's back door. No case law has been cited in support of such a contention, and, like the district court, we conclude that it is without merit. Mr. Carter simply did not have any legitimate expectation of privacy in the place where the marijuana was found, and the district court did not err in allowing the discovery of the marijuana to be used against him at trial.

## III.

■ We turn next to Mr. Carter's contention that the district court erred in admitting the hearsay statements of Timmie Locklear.

■ Under Rule 801(d)(2)(E), Fed. R.Evid., a statement made by a co-conspirator in furtherance of the conspiracy is not hearsay—and is thus admissible—if the court finds by a preponderance of the evidence (1) that a conspiracy existed, (2) that the defendant against whom the hearsay is offered belonged to the conspiracy, and (3) that the hearsay statement was made in the course of and in furtherance of the conspiracy. *United States v. Swidan,* 888 F.2d 1076, 1080 (6th Cir.1989). The defendant need not be charged with the conspiracy, and the court may consider the contents of the statements themselves in weighing the evidence. *Id.* (citations omitted). A statement is made in furtherance of a conspiracy if it was intended to promote conspiratorial objectives; it need not actually further the conspiracy. *United States v. Hitow,* 889 F.2d 1573, 1581 (6th Cir.1989).

A determination of admissibility under Rule 801(d)(2)(E) entails both factual and legal determinations. Answers given by the trial court to the questions of whether there was a conspiracy, whether the defendant was a member of the conspiracy, and whether the co-conspirator's statements were in furtherance of the conspiracy are subject to review under a clearly erroneous standard. *United States v. Gessa,* 971 F.2d 1257, 1260–61 (6th Cir.1992) (en banc). The ultimate legal conclusion is subject to de novo review. *Id.* at 1261.

Applying these standards, we find no error here. It is true that merely riding in a car, even with knowledge of the presence of illegal drugs, is not enough to establish a conspiracy. *United States v. Sanchez–Mata,* 925 F.2d 1166, 1168 (9th Cir.1991). Mr. Car-

ter was more than a knowledgeable passenger, however. The two men had been riding together for a considerable time, and it would be fair to conclude that Carter's presence provided aid and comfort to Locklear during a long and demanding drug run. The conflicting stories told by the two men create a reasonable inference that they were attempting to deceive the police as to their activities. And Mr. Carter's repeated attempts to walk away from the van during questioning suggest that he was trying to keep the police from discovering the marijuana. The district court's findings that a conspiracy existed, that Mr. Carter was a member of the conspiracy, and that his activities were made in the course of the conspiracy and in furtherance of it are not clearly erroneous. Given these factual determinations, the district court was correct in concluding that the statements did not constitute hearsay.

## IV.

Implicit in the foregoing is the conclusion that the evidence against Mr. Carter was not constitutionally insufficient to support a conviction. In this connection it is incumbent upon the government to present proof from which a rational jury could find, beyond a reasonable doubt, every element of the crime with which the defendant has been charged. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Upon appeal of a conviction, our review "must take the view most favorable to the government." *United States v. Head,* 927 F.2d 1361, 1365 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 144, 116 L.Ed.2d 110 (1991). The government must be given the benefit of all inferences that can reasonably be drawn from the evidence, and it is not necessary to exclude every reasonable hypothesis but guilt. *Id.*

In the case at bar the evidence showed that Mr. Carter was riding in a van with five suitcases full of marijuana. The only barrier between him and the suitcases was a seatback. The marijuana emitted a strong odor that was immediately evident to the police when they opened the door of the van. As in *United States v. Cady* (unpublished), 996 F.2d 1217, 1993 WL 239064, 1993 U.S.App.

LEXIS 17217 (6th Cir. June 30, 1993), where we affirmed the conviction of a passenger under somewhat similar circumstances, there was ample evidence that the defendant knew of the marijuana. See also *United States v. French,* 974 F.2d 687, 692 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1012, 122 L.Ed.2d 160 (1993) (odor of marijuana emanating from a truck justified a police search of the vehicle).

The instant case bears little resemblance to *United States v. Pena,* 983 F.2d 71 (6th Cir.1993), where cocaine was concealed in a secret compartment in the trunk of a car under layers of carpet, automotive undercoating, "bondo," and metal plating. In *Pena* there was no reason to suppose that the defendant passenger knew about the cocaine; in the case before us, by contrast, it is hard to imagine how any rational juror could fail to conclude that defendant Carter was fully aware of the marijuana.

He was not only aware of the marijuana, the jury was entitled to conclude,. he was actively trying to prevent the police from becoming aware of it. If one of Mr. Carter's purposes in accompanying Mr. Locklear on this illicit business trip was to provide assistance as necessary, that is certainly what he was doing in trying to lead the police away from the van and in trying to cozen the police with a cover story about family matters in Arkansas. The evidence against Mr. Carter was at least as strong as the evidence against the comparable defendant whose conviction we upheld in *Head.*

Finding none of Mr. Carter's contentions meritorious, we **AFFIRM** his conviction.