28 F.3d 1214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Rudoulph GARNIER, Defendant-Appellee.
 No. 93-5925.
 United States Court of Appeals, Sixth Circuit.
 July 12, 1994.
 
 Before KEITH, RYAN, and DAUGHTREY, Circuit Judges.
 DAUGHTREY, Circuit Judge.
 
 
 1
 The defendant, Rudoulph Garnier, was charged with possession of cocaine base with the intent to distribute. In the district court, he successfully sought to suppress the evidence seized by police from a vehicle in which he was a passenger at the time the car was stopped by police for a possible traffic violation. The government appeals the order of suppression, relying on the defendant's consent to search as justification for the search of his personal effects in the trunk of the car and seizure of the crack cocaine that formed the basis for this prosecution. We conclude that the extended detention of the defendant at the time of the traffic stop violated the Fourth Amendment and that the subsequent search and seizure was therefore invalid. We therefore affirm the district court's order of suppression.
 
 
 2
 In the early morning hours of February 17, 1993, Angela Gibson was stopped by local police officers in Johnson City, Tennessee, for making a left turn without signalling and for "erratic driving." Field sobriety tests administered to Gibson did not result in DUI charges being placed against her. While investigating the situation, however, Officer Ed Tolliver noticed Garnier, a passenger in the car, reaching into a bag on the car's floorboard. When the defendant reached toward the bag a second time, Tolliver asked Garnier to exit the vehicle and requested consent to look into the bag. The defendant complied with both requests. There was nothing incriminating in the bag.
 
 
 3
 When Tolliver frisked the defendant for weapons, the officer found a pocket beeper and two rolls of paper money on Garnier. Tolliver then asked Gibson, the wife of the owner of the car, whether the police could search the vehicle's trunk. After receiving Gibson's consent, Tolliver also asked for Garnier's consent. The defendant responded, "Go ahead and search it; you're going to anyway." Upon opening the trunk, the officer observed a number of shopping bags and asked who owned the bags. Garnier claimed ownership of the items. In one of the bags belonging to the defendant, Officer Lorie Cox found a baggie containing a large amount of crack cocaine.
 
 
 4
 Prior to trial, Garnier filed a motion to suppress the evidence seized in the search of the trunk. That motion was referred to a magistrate for a report and recommendation.
 
 
 5
 The magistrate recommended that Garnier's suppression motion be denied because the defendant's consent to search the car's trunk was sufficient to allow police to look inside the shopping bags found there. The district court disagreed and granted the motion to suppress the evidence, based upon three grounds: (1) Garnier's consent was invalid because the officers had no reasonable belief that the defendant had sufficient authority over the vehicle to consent to a search of the trunk; (2) Gibson's consent to search the trunk was not sufficient to justify the search of the defendant's shopping bags found there; and (3) the search of the trunk violated the Fourth Amendment because it was not reasonably related in scope to the circumstances which justified the initial interference with the defendant's liberty. Because we conclude that resolution of the third issue is dispositive of the appeal, we pretermit discussion of the defendant's consent, except as it relates to the issue of his detention.
 
 
 6
 In Florida v. Royer, 460 U.S. 491, 500 (1983), the United States Supreme Court held:
 
 
 7
 [A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.... It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.
 
 
 8
 Here, the officers detained Gibson on suspicion of DUI. The police apparently satisfied themselves, however, that no grounds for such a charge existed. Even though the officers were then justified in a patdown of the defendant and a search of the bag at his feet after Garnier's actions gave the police articulable and reasonable suspicion to fear for their safety, the failure of that limited search and patdown to uncover a weapon did not justify requesting consent for yet a further intrusion into the privacy of these two individuals.
 
 
 9
 In United States v. Guzman, 864 F.2d 1512, 1519 (10th Cir.1988),[1] another circuit court recognized:
 
 
 10
 An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. [Citations omitted]. When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.
 
 
 11
 Cf. United States v. Carter, 14 F.3d 1150, 1153-54 (6th Cir.1994) (driver's consent to search invalid when obtained after detention subsequent to police determination that justification for initial stop no longer existed).
 
 
 12
 The Tenth Circuit has also determined, however, that "a defendant's consent may, under certain circumstances, remove the taint of an illegal detention." United States v. Recalde, 761 F.2d 1448, 1457 (10th Cir.1985). Cf. United States v. Kelly, 913 F.2d 261, 266 (6th Cir.1990), in which the Sixth Circuit declined to hold "that a consent can never persist after some type of [subsequent] unlawful intrusion." "[W]hen a consent to search is preceded by a Fourth Amendment violation, the consent is valid only if it is voluntary in fact." United States v. Guzman, supra, at 1520. In determining whether such consent is voluntary in fact, the Tenth Circuit has applied the factors adopted in Brown v. Illinois, 422 U.S. 590, 603-04 (1975), namely, the temporal proximity of the detention and the consent, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct.
 
 
 13
 In this case, the request for consent to search followed immediately the failure of the police officers to release Gibson and Garnier to proceed on their ways after determining that the driver was not under the influence of an intoxicant. Moreover, no intervening circumstances lessened the impact of the alleged Fourth Amendment violation; in fact, the apparent failure of the police officers to inform Gibson and Garnier that they could refuse to consent to the search and still be released from the temporary detention had the added effect of convincing the individuals that they had no alternative but to submit to further seizure and searches. Finally, the purpose of the "official misconduct" can be construed as nothing other than an attempt to engage in a fishing expedition for evidence of illegal activity.
 
 
 14
 To condone the actions of the police in this case would unnecessarily extend the permissible boundaries of investigative detentions. More ominously, such a decision would relay the message that any routine traffic stop can, even without probable cause of a further violation, be followed by an inherently coercive request to conduct a search of the detained vehicle.
 
 
 15
 The judgment of the district court is AFFIRMED, and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 16
 RYAN, Circuit Judge, dissenting.
 
 
 17
 In my judgment, the majority has failed to correctly identify the relevant law that ought to determine this case, and perforce, has reached an incorrect result. Therefore, I must respectfully dissent.
 
 
 18
 The majority relies very heavily, indeed almost exclusively, on United States v. Guzman, 864 F.2d 1512 (10th Cir.1988), to justify its conclusion that the officer here exceeded the permissible boundaries of the initial stop. As the Tenth Circuit itself has recognized, however, the facts of Guzman are inapposite in circumstances such as exist in the present case.
 
 
 19
 In Guzman, the officers pulled the defendants' car over because the driver was not wearing a seat belt. Id. at 1514. During the legitimate scope of that traffic stop, nothing occurred to give rise to an articulable suspicion that the defendants were transporting drugs. Despite this failure, the officer asked "intrusive" and "extensive" questions. Id. at 1519-20. It was after this interrogation that the defendants consented to a search of their vehicle. The Tenth Circuit held that the detention of the defendants during the interrogation constituted an illegal, unjustified investigatory stop. Id. at 1520. Because the consent to search occurred after the illegal police conduct, it was subject to the "fruit of the poisonous tree" doctrine. The court remanded the case to the district court for factual findings as to whether the consent was sufficiently attenuated from the illegal conduct so as to be voluntary. Id. at 1521.
 
 
 20
 A later Tenth Circuit case fleshed out the boundaries of Guzman. In United States v. Soto, the court stated:
 
 
 21
 During a routine traffic stop, the detaining officer may request a driver's license and vehicle registration, run a computer check on the car and driver, and issue a citation.... "If the driver produces a valid license and proof of right to operate the vehicle, the officer must allow him to continue on his way without delay for further questioning." ... If the officer wishes to detain the driver for further questioning unrelated to the initial stop, the officer must have an objectively reasonable articulable suspicion that illegal activity has occurred or is occurring.
 
 
 22
 988 F.2d 1548, 1554 (10th Cir.1993).
 
 
 23
 In Soto, the officer pulled the defendant over for speeding. The driver of the car identified himself as Leonel Guerra, but the car was registered to someone named Corral. The driver told the officer that Corral was his uncle, but was unable to provide the officer with Corral's address. In addition, the officer testified that the driver appeared "panicky." The court held that this was sufficient articulable suspicion to justify a continued stop and to permit the officer to question the driver about the presence of contraband in the vehicle. Id. at 1556. The officer was also allowed to request permission to search the trunk of the car. The driver voluntarily consented, so the search was lawful. Id. at 1558. Other cases have held that inconsistent answers by the driver and passenger to an officer's initial questions provide articulable suspicion justifying continued detention and an inquiry into the presence of contraband. See, e.g., United States v. Sanchez-Valderuten, 11 F.3d 985 (10th Cir.1993); United States v. Cummins, 920 F.2d 498 (8th Cir.1990), cert. denied, 112 S.Ct. 428 (1991).
 
 
 24
 Here, the officers stopped the car on suspicion that the driver was under the influence of drugs or alcohol. In the course of this legitimate stop, Garnier, the passenger, made several suspicious movements toward the duffel bag at his feet. Consequently, the police lawfully requested that Garnier exit the car, obtained his permission to search the bag, searched the bag and the passenger seat where Garnier had been sitting, and frisked Garnier. The majority concedes that these actions by the police were justified.
 
 
 25
 These legitimate police activities revealed that Garnier was carrying a cellular phone, a beeper, and two rolls of paper currency totalling approximately $2,100. These items provided the officer with sufficient articulable suspicion to extend the purpose and scope of the stop. No competent police officer in America, in 1993, would fail to suspect, reasonably, that these items suggested that narcotics might well be present somewhere in the vehicle. As a result of these discoveries, the officer was entitled, at the very least, to question Gibson and Garnier about the presence of contraband and to request permission to search the trunk. Garnier consented to such a search. The record contains no indication that this consent was not voluntary.
 
 
 26
 Both the district court and the majority imply that the officer's request for permission to search the trunk could only be valid if he discovered a weapon during his patdown of Garnier and search of Garnier's bag. A diligent search has failed to reveal any cases holding, or even suggesting, that an officer must discover a weapon before he can request consent to search a vehicle. Instead, the cases hold that the officer must point to articulable reasonable suspicion to support the extension of the stop beyond the initial traffic stop. Clearly, the requisite reasonable suspicion existed in this case. Consequently, I would hold that the district court erred granting the motion to suppress.
 
 
 
 [1]
 In United States v. Ferguson, 8 F.3d 385 (6th Cir.1993) (en banc), this Court declined to adopt Guzman's approach to determining whether an initial stop is pretextual. Ferguson, however, in no way constrains our search and seizure analysis in a situation such as this, on which the police have satisfied themselves that the initial reason for the stop has expired and no additional evidence of wrongdoing has yet been uncovered by legitimate means not extending the detention