110 F.3d 65
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gilbert Antonio JARQUIN, Defendant-Appellant.
 No. 95-6218.
 United States Court of Appeals, Sixth Circuit.
 April 3, 1997.
 
 Before: LIVELY, SILER and COLE, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant appeals the district court's denial of his motion to suppress evidence seized in connection with his conviction for possession of cocaine with intent to distribute. The defendant contends that the officer's warrantless search of his truck following a traffic stop violated the Fourth Amendment because he was illegally detained at the time he gave consent to the search. For the reasons that follow, we AFFIRM the decision of the district court.
 
 I.
 
 2
 On May 22, 1994, Deputy Sheriff Whitlock of the Shelby County, Tennessee Sheriff's Department was traveling eastbound on Interstate 40 in Shelby County, Tennessee. At approximately 12:45 p.m., Whitlock noticed a pickup truck being driven by Defendant Jarquin that had a large white cover, or "topper," on the rear. Whitlock testified that the truck was traveling between forty-five and fifty-five miles per hour in a sixty-five-mile-per-hour zone, and was weaving in and out of its lane. Whitlock then testified that he, suspecting Jarquin was intoxicated, turned on the blue light of his squad car and initiated a traffic stop.
 
 
 3
 After he pulled over to the side of the interstate, Jarquin exited his truck and met Whitlock in the area between the truck and Whitlock's car. Whitlock asked Jarquin whether he had been drinking and also asked for Jarquin's driver's license and registration. While Jarquin got his registration from the truck, Whitlock engaged him in conversation and learned that Jarquin was traveling to Knoxville to pick up a motorcycle in storage there. As he walked alongside the truck, Whitlock noticed that the topper did not fit properly, that metal shavings were in the bed of the truck, and that the topper appeared to have been quickly spray-painted. After satisfying himself that Jarquin had not been drinking, Whitlock determined that the offense did not warrant a regular ticket and asked Jarquin to accompany him to the police car as he completed a "courtesy citation." Whitlock sat down in the front seat, while Jarquin opened the rear door, sat down, and closed the door himself.
 
 
 4
 Whitlock wrote a courtesy citation for Jarquin and handed it to him to sign. Whitlock then asked Jarquin if he had anything illegal in the truck. Jarquin said that he did not, and while Jarquin still had the citation book in the backseat of the car, Whitlock asked if he could search Jarquin's truck. Jarquin agreed, and Whitlock gave Jarquin a consent form to read and sign. Jarquin signed the form, whereupon Whitlock called for backup assistance to conduct the search. Using a dog trained to detect the odor of drugs, Whitlock and another officer discovered cocaine concealed in the roof of the topper.
 
 
 5
 Eugene Ballard, a reserve deputy sheriff, drove the truck from the scene of the traffic stop to the Sheriff's Department garage. He testified that it was top heavy and that it felt as though it were going to "tip over." Chris Jones, another deputy sheriff, followed Ballard back to the garage and testified that he observed the truck weaving. At the garage, 420 kilograms, or approximately 1,060 pounds, of cocaine were removed from a secret compartment in the roof of the topper.
 
 
 6
 On May 24, 1994, Jarquin was indicted for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Jarquin filed a motion to suppress the evidence seized from the roof of the topper and the district court referred his motion to a magistrate judge. The magistrate judge filed a report and recommendation on September 6, 1994, recommending that Jarquin's motion be granted. The magistrate judge determined that Whitlock did not have probable cause to stop Jarquin's truck and that the purposes of the traffic stop had been completed at the time that Jarquin consented to Whitlock's search. Accordingly, the magistrate judge concluded that Jarquin's consent was the product of an illegal detention and that the evidence gathered during Whitlock's warrantless search should be suppressed.
 
 
 7
 The government filed timely objections to the magistrate judge's report, and the district court denied Jarquin's motion to suppress on November 28, 1994. Following the denial of his motion, Jarquin entered a guilty plea, reserving his right to appeal the denial of his motion to suppress pursuant to Fed.R.Crim.P. 11(a)(2). The district court sentenced Jarquin to sixty months' imprisonment and a five-year term of supervised release. This timely appeal followed.
 
 II.
 
 8
 When reviewing a district court's denial of a motion to suppress evidence, we must view the evidence in a light most favorable to the government. United States v. Garza, 10 F.3d 1241, 1245 (6th Cir.1993). Accordingly, we review de novo the district court's legal conclusions but will not disturb its factual findings unless they are clearly erroneous. United States v. Bradshaw, 102 F.3d 204, 209 (6th Cir.1996); see United States v. Palomino, 100 F.3d 446, 448 (6th Cir.1996); United States v. Roberts, 986 F.2d 1026, 1029 (6th Cir.1993) (citing United States v. Hughes, 898 F.2d 63, 64 (6th Cir.1990)); United States v. Sangineto-Miranda, 859 F.2d 1501, 1512 (6th Cir.1988). A factual finding is clearly erroneous when the reviewing court is firmly convinced that a mistake has been made. Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).
 
 III.
 
 9
 Jarquin argues that the district court erred in denying his motion to suppress the cocaine recovered from the search of his truck. Specifically, Jarquin contends that the purposes of the traffic stop had been completed before Whitlock asked for consent to search and, thus, that he was being unlawfully detained in Whitlock's car at the time he gave consent. Jarquin argues that this unlawful detention vitiated his consent and requires suppression of the evidence seized pursuant to the search of his truck. We disagree.
 
 
 10
 In United States v. Mesa, 62 F.3d 159, 162 (6th Cir.1995), we held that a motorist could not be lawfully detained once the purposes of the initial traffic stop were completed. Accordingly, any consent given by a defendant after an illegal detention has begun is rendered invalid as the fruit of an illegal arrest. See United States v. Carter, 14 F.3d 1150, 1153-54 (6th Cir.1994). However, a police officer's detention of a defendant in his cruiser while he checks a defendant's license and issues a traffic citation does not automatically constitute an arrest. Bradshaw, 102 F.3d at 211, 212.
 
 
 11
 In the present case, the district court correctly held that the purposes of the traffic stop had not been completed at the time that Whitlock asked Jarquin for consent to search his truck. The district court found that, at the time Whitlock requested consent to search, Whitlock had not retrieved his ticket book from Jarquin, returned Jarquin's papers, or given Jarquin a copy of the courtesy citation. Furthermore, the district court found that the entire stop "lasted little more than seven minutes" and that "there was no indication that Whitlock prolonged the stop by withholding Jarquin's papers for the purpose of getting consent...." We are bound by these factual determinations because there is no contrary evidence in the record and, thus, we cannot say that the determinations are clearly erroneous.
 
 
 12
 Accordingly, we believe that the district court's finding that Whitlock had not finished issuing the citation when he requested permission to search was not clearly erroneous. See Bradshaw, 102 F.3d at 209; Garza, 10 F.3d at 1245. Because Whitlock had not finished issuing the citation, the purposes of the traffic stop had not been completed and Jarquin was not being unlawfully detained. See Mesa, 62 F.3d at 162. Viewing the evidence in a light most favorable to the government, we believe that Jarquin's consent was not rendered invalid by an illegal detention. See Carter, 14 F.3d at 1153-54.
 
 
 13
 Additionally, the cases cited by Jarquin to demonstrate that he was unlawfully detained at the time he consented to the search are distinguishable from the present case. In each of the cited cases, the officer had clearly completed the purposes of the traffic stop before he engaged the defendant in further conversation to elicit the defendant's consent. See United States v. McSwain, 29 F.3d 558 (10th Cir.1994) (when an officer stopped a motorist solely to ascertain the authenticity of a temporary registration sticker and had confirmed the validity of the sticker and the motorist's license, continued questioning of the motorist was unlawful); United States v. Sandoval, 29 F.3d 537 (10th Cir.1994) (when an officer had finished issuing a courtesy citation for a speeding violation and had checked and returned the motorist's license and registration, detaining the motorist to ask additional questions unrelated to the speeding violation was improper); United States v. Garnier, No. 93-5925, 1994 WL 362085 (6th Cir.July 12, 1994) (unpublished disposition) (when a motorist had passed a field sobriety test, officer had conducted patdown search of both motorist and passenger, and no suspicious circumstances justified continued detention, officer's continued questioning was improper). In each case, the officer intentionally prolonged the traffic stop in order to question the defendant about matters unrelated to the defendant's violation. Conversely, the district court in the present case found no evidence that Whitlock prolonged the traffic stop beyond the time necessary to issue the citation and check Jarquin's license and registration. Thus, the cited authority does not control our resolution of the case at bar.
 
 
 14
 Because the purposes of the traffic stop had not been completed at the time that Whitlock asked for consent to search Jarquin's truck, Jarquin's consent was not the product of an illegal detention. See Carter, 14 F.3d at 1153-54. Accordingly, the district court correctly denied Jarquin's motion to suppress.
 
 IV.
 
 15
 For the foregoing reasons, we AFFIRM the district court's denial of Jarquin's motion to suppress.