**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0627n.06**
**Filed: August 23, 2006**

**No. 05-5639**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Eastern |
| ANTHONY CHRISTOPHER WAGNER, | ) | District of Tennessee |
| Defendant-Appellant. | ) | |

Before:        BOGGS, Chief Judge; BATCHELDER, Circuit Judge; and BELL, District Judge.[*]

PER CURIAM.

Following a jury trial, Anthony Christopher Wagner was convicted of possession of

methamphetamine, in violation of 21 U.S.C. § 844, and of possession of pseudoephedrine and

chemicals and materials for the production thereof, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 2,

841(c)(2), and 843(a)(6). Wagner was also convicted of being a felon in possession of a firearm and

ammunition, in violation of 18 U.S.C. §§ 922(g) and 942(a)(2). He now appeals those convictions,

arguing that the drugs and guns he was convicted of possessing were seized illegally, and that the

---

[*]The Honorable Robert Holmes Bell, Chief United States District Judge for the Western
District of Michigan, sitting by designation.

district court erred in denying his motion to suppress. He also argues that the gun charges were improperly joined with the drug charges, contrary to Criminal Rule 8(a). We affirm his conviction.

**I**

On January 15, 2004, Wagner and his girlfriend Jennifer Smith were checking out at the Wal-Mart store in Sparta, Tennessee. Among the many items they purchased there were several products used in the making of methamphetamine, including HEET gas-line antifreeze, a propane canister, steel wool, a plastic drop cloth, rubbing alcohol, peroxide, and coffee filters. As fate would have it, White County Sheriff's Deputy Rudy Cruz, who was making a purchase of his own, observed Wagner and Smith buying these items. Suspecting that they were to be used in a meth lab, Cruz followed the couple out of the store, and when they drove away in Smith's truck, Cruz followed in his squad car.

Cruz tailed Smith's truck for about twelve miles, during which time he learned from his dispatcher that the truck was registered to a "Jennifer Smith," and that a nearby county had an outstanding warrant for the arrest of a person of that name. The warrant did not, however, include the middle initial, date of birth, or social security number of this Jennifer Smith, and so Cruz did not feel certain that its subject was the same person as the woman to whom the truck he was following was registered. (It later turned out that the warrant was not for Wagner's girlfriend.) Nevertheless, Cruz finally activated his lights, pulled the truck over, and arrested Smith. The ensuing search of the truck turned up the materials just purchased at the store as well as a loaded .357 Magnum.

Wagner objects to this search on various grounds, but he concedes that he had no legitimate expectation of privacy in the contents of his girlfriend's truck, and thus can object to the search only

by contesting the validity of the initial stop. *See United States v. Carter*, 14 F. 3d 1150, 1154 (6th Cir. 1994). Wagner argues, however, that the illegality of the stop alone would require suppression of the results of the subsequent searches, as the results of those searches would then be the "fruit of the poisonous tree" of the illegal stop under *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

First, we note that Wagner's reliance on *Carter* may be misplaced. Although "[a] passenger, like anyone else, obviously has a right not to be detained illegally," *Carter*, 14 F.3d at 1154, the victim of an illegal detention has standing under *Wong Sun* to challenge the results of only such searches as were the direct 'fruit' of the detention. In *Carter*, we held that a passenger had no standing to move for the suppression of drugs found in the car in which he had been traveling, because their discovery was the fruit not of his illegal detention, but of the driver's. *Ibid.* In this case, however, it is not clear whether Deputy Cruz, in pulling over Smith's truck, was effecting a detention of Smith only (with Wagner's detention occurring incidentally) or of both Wagner and Smith. If the latter, Wagner might have standing under *Wong Sun* to challenge the stop and its fruit. As we will explain, however, even if Wagner does have standing to challenge the stop, his challenge will fail.

On appeal of a denial of a motion to suppress, we review the district court's supporting findings of fact for clear error and its conclusions of law de novo. *United States v. Hudson*, 405 F. 3d 425, 431 (6th Cir. 2005). Because there is no serious dispute between the parties about the facts leading up to Deputy Cruz's stop of Jennifer Smith's truck, the question presented here is simply whether the stop was "reasonable" within the meaning of the Fourth Amendment.

*Terry v. Ohio*, 392 U.S. 1 (1968), "permits a police officer briefly to detain a person or property for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is about to occur." *United States v. Davis*, 430 F. 3d 345, 353 (6th Cir. 2005). In *United States v. Townsend*, 330 F.3d 438, 439 (2003), a tip from a Wal-Mart employee that meth-making products had just been purchased, coupled with the police's knowledge that the registrant of the vehicle in which the purchaser drove away had previously been involved with methamphetamine, was held by this court to be grounds for a *Terry* stop of that vehicle.

In our case, Deputy Cruz was an eyewitness to Wagner's purchase of items constituting a veritable shopping list for a meth-lab operator. These observations constitute articulable facts in support of a reasonable suspicion that criminal activity was occurring. Wagner's argument that Cruz's twelve-mile "hesitation" before stopping the truck demonstrates that he did not think he had grounds for a stop is unpersuasive. The test for reasonable suspicion is not whether the detaining officer subjectively believes that the circumstances create a reasonable suspicion, but whether there is "a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted).

## II

An unrelated search occurred nearly three months later, on April 9, 2004. Van Buren County Deputy Sheriff Kenneth Pruitt received notice over his radio of the existence of active Florida warrants for Wagner's arrest. Fearing that Wagner had heard this on a police scanner, Pruitt immediately went to the hotel where Wagner was living and arrested him. A search of Wagner's person produced methamphetamine and paraphernalia.

Pruitt then asked for Wagner's consent to search the hotel room. Wagner responded that his mother owned the hotel, and that she would have to consent to any search. At the suppression hearing, Pruitt testified that Wagner's mother was eager to give consent, which eventually extended to a cabin on her property. These searches yielded more methamphetamine and equipment for production of that drug. After conducting the searches, Pruitt presented Wagner's mother with a consent form. She agreed to sign the form, however, only after being allowed to write "under distress" next to her signature.

On appeal, Wagner first notes that at the time of his arrest, no Tennessee fugitive warrant had been issued for him. In fact, he claims that there was no extradition paperwork of any kind, and that he was arrested based on a verbal communication of the existence of the Florida warrant to Deputy Pruitt. He argues that because "the extradition documents on their face [were not] in order," *Michigan v. Doran*, 439 U.S. 282, 289 (1978), the evidence obtained as a result of the arrest should be suppressed under *Wong Sun*.

In reviewing the denial of a motion to suppress, we inquire not whether the arrest comported with the requirements of state law, but rather whether it satisfied the requirements of the Fourth Amendment. *United States v. Wright*, 16 F.3d 1429, 1434-37 (6th Cir. 1994). In making this inquiry, we review the trial court's findings of fact for clear error, and its conclusions of law de novo. *Id.* at 1437.

Wagner's argument lacks merit. The Supreme Court has held that a fugitive charged with a crime in one state may "be arrested, without a warrant, by a peace officer in the state in which he is found, and be detained for the reasonable time necessary to enable a requisition to be made."

*Stallings v. Splain*, 253 U.S. 339, 341 (1920). The *Doran* standard applies only after this "reasonable time" has expired, not to the initial arrest. *See Sivard v. Pulaski County*, 17 F.3d 185, 190 (7th Cir. 1994) (17 days of detention is longer than the reasonable time necessary for requisition); *Gee v. Kansas*, 912 F.2d 414, 418 (10th Cir. 1990); *United States v. Miles*, 413 F.2d 34, 40 (3rd Cir. 1969). Wagner does not dispute that he was arrested pursuant to a valid warrant, and thus that the Fourth Amendment was satisfied. Consequently, the result of the ensuing searches is not "fruit of the poisonous tree." *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001).

Wagner also maintains that his mother's purported consent to the searches was ineffective because it was given "under distress." The district court found no evidence "of threats or any other indication [that her] will was overwhelmed. In fact, the only evidence in the record indicates [she] was eager to consent . . . ." On appeal, Wagner presents no new argument but simply asserts that the district court's finding was incorrect. Whether valid consent was given to a search is a question of fact, which we review only for clear error. *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998). The district court's finding is supported by the uncontradicted testimony of Deputy Pruitt, and Wagner has presented no new argument for the judge having erred. Reversal is not warranted.

**III**

Finally, Wagner maintains that the district court erred when it denied his motions, made under Fed. R. Crim. P. 8(a) and 14, to sever the two counts of the indictment that were based on the January 15 incident from the counts based on the April 9 arrest, and to sever the felon-in-possession charges from the drug charges. On appeal he limits his argument to maintaining that his January 15 possession-of-a-firearm charge should not have been joined to the April 9 drug charges.

Federal Rule of Criminal Procedure 8(a) permits joinder of charges if they are "of the same or similar character, or  are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  A trial court may construe Rule 8(a) broadly to further trial convenience and judicial efficiency.  *United States v. Graham*, 275 F.3d 490, 512 (6th Cir. 2001). Even if counts are properly joined under Rule 8(a), however, the trial court retains discretion to sever them under Fed. R. Crim. P. 14 if it appears the defendant would be prejudiced by joinder. While we review the denial of a Rule 14 severance for abuse of discretion, *United States v. Frost*, 125 F.3d 346, 391 (6th Cir. 1997), the propriety of joinder under Rule 8(a) is a matter of law, in which the trial court has no discretion.  *United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002). Whether joinder was proper under Rule 8(a) is determined from the allegations on the face of the indictment.  *Ibid.*

Here, the indictment specifically alleges that Wagner possessed the firearm on January 15 in connection with his possession of meth-making materials.  Since guns are "tools of the [drug] trade," firearm and drug charges may be joined "when both guns and drugs are uncovered in the same search."  *Id.* at 459.  Further, since components of a meth lab were found in Wagner's possession less than three months after his January 15 arrest for possession of similar ingredients, the drug and gun charges were all "parts of a common scheme or plan," and joinder was thus proper under Fed. R. Crim. P. 8(a).  Finally, because Wagner made no showing that he was prejudiced by the joinder, the trial court did not abuse its discretion in denying severance under Rule 14.

**IV**

For the foregoing reasons, we **AFFIRM** the district court's denial of Wagner's motions to suppress and sever.