NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0647n.06
Filed: October 22, 2008

No. 07-5864

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

        v.

WALTER BASCOM SHROUT,

    Defendant-Appellant.

On Appeal from the United
States District Court for the
Eastern District of Kentucky
at Lexington

_____/

**Before:**    **GUY, BATCHELDER, and McKEAGUE, Circuit Judges.**

    **RALPH B. GUY, JR., Circuit Judge.**    Defendant Walter Bascom Shrout was convicted following a jury trial of conspiracy to engage in vote fraud, 18 U.S.C. § 371, making a false statement to a federal agent, 18 U.S.C. § 1001(a)(2), and obstruction of justice, 18 U.S.C. § 1512(b)(3). Seeking a new trial, Shrout argues that the district court improperly allowed admission of a daily planner seized from the vehicle of an alleged coconspirator in the vote-buying scheme. Finding no error, we affirm.[1]

**I.**

    Walter Shrout, who held the elected position of County Judge Executive of Bath

---

[1]Defendant also asserted that the prosecutor made impermissible reference to the defendant's failure to testify in closing arguments, but withdrew that claim at oral argument.

County, Kentucky, was charged alone in a three-count indictment.[2] The conspiracy count alleged that between May 1 and May 15, 2006, Shrout conspired with others, named and unnamed, to solicit absentee voters and pay them to vote for him in violation of 42 U.S.C. § 1973i(c), which makes it a federal offense to, among other things, pay or offer to pay for votes in a primary election held at least in part to select a candidate for certain offices including the office of Member of the United States House of Representatives. The primary, which was held on May 16, 2006, included a race in the Fifth Congressional District to select a candidate for Member of the House of Representatives.

The vote-buying involved manipulation of the absentee in-person voting process in the contested primary race for the office of County Judge Executive. In Kentucky, registered voters who expect to be absent on election day may vote in person during a two-week period preceding the election. Shrout was alleged to have given thousands of dollars in cash to others, including Mike Butcher, Norman Crouch, Buck White, Steven Crouch, and Belinda Crouch, to be used to pay voters to cast absentee votes for Shrout. To vote absentee, the voter must certify in writing, using the Voting Machine Absentee Ballot Form (SBE 44B), that he or she will not be present in the precinct on voting day. A voter may also request assistance operating the voting machine or casting a ballot by certifying in writing, using the Voter Assistance Form (SBE 31), that he or she has an infirmity such as physical disability, blindness, or an inability to read English.

Bath County Clerk Glenn Thomas testified that absentee voting was unusually heavy

---

[2]Each county in Kentucky elects a chief executive officer known as the county judge/executive. KY. REV. STAT. ANN. §§ 67.705 and 67.710.

in the May 2006 primary, with 199 of the absentee in-person voters requesting assistance. Thomas indicated that many of those voters did not actually appear to have a qualifying infirmity. An FBI investigation followed the primary, starting first with interviews with suspect voters. Some of them admitted selling their votes and cooperated with the investigation. The indictment alleged that Butcher—himself a convicted felon ineligible to vote—assisted 75 voters in casting absentee ballots in the primary, while Steven Crouch assisted 21, Norman Crouch assisted 15, Belinda Crouch assisted 5, and Buck White assisted 4 voters. The conspirators helped voters falsely apply to vote absentee and request assistance in voting, and even accompanied voters into the booth in order to verify or cast the vote for Shrout.

The investigation led first to one of Shrout's two opponents, Danny Michael (Mike) Swartz, who had decided to challenge Shrout out of anger over the awarding of county contracts to his uncle, Sonny Swartz, and another individual. When Mike Swartz learned of Shrout's vote-buying, he started buying votes as well. Tammy Manley testified that Sonny Swartz gave her $1,000 to switch the votes that she was buying for Mike Swartz to Shrout. She agreed and took his money, but did not switch the votes to Shrout. Sonny Swartz did not testify at Shrout's trial, and the admission of statements from his 2006 daily planner has been challenged on appeal.

Taking the other charges out of order, count 3 alleges that between July and October 2006, Shrout attempted to corruptly persuade others with the intent of preventing them from revealing his own participation in the vote buying to federal investigators in violation of 18

U.S.C. § 1512(b)(3). Specifically, it was alleged that Shrout tried to corruptly persuade them by asking them not to reveal his involvement and by paying for defense attorneys, making cash payments, and promising to pay personal bills if they were to go to prison. The investigation proceeded, and charges were brought against some individuals.

On October 16, 2006, Shrout was interviewed by the FBI at his request. Shrout asserted that he was the victim of an extortion plot by Butcher and others who falsely accused him of vote-buying and demanded that he pay them $100,000 each to conceal his participation. Shrout specifically denied ever having paid money to buy votes. This was the basis for count 2, which alleged that Shrout knowingly and willfully made a materially false statement to FBI Special Agent Casey Gabriel denying his participation in the vote-buying scheme during the May 2006 primary in violation of 18 U.S.C. § 1001(a)(2).

Shrout, age 55, was convicted of all counts at the conclusion of a three-day jury trial. The district court denied Shrout's motion for new trial, sentenced Shrout to a 27-month term of imprisonment, and granted Shrout's motion for bond pending appeal. This appeal followed.

## II.

On March 2, 2007, less than two weeks before Shrout's trial, Sonny Swartz was arrested on charges arising out of the vote-buying scheme. A search incident to his arrest resulted in the seizure of address books, ledgers, and a 2006 daily planner from his truck. Swartz's name, home phone number, business phone number, and cell phone number were listed on the inside cover. The daily planner also contained references to Swartz's farming

and rental property businesses, as well as telephone numbers for others associated with him. At issue in this appeal are statements from the planner reflecting loans to different people, including loans to Walter Shrout on May 1, 12, 13, 15, and 16 that totaled $35,950.

Defendant's pretrial motion to exclude this evidence argued that the evidence was not disclosed in a timely fashion. Since the evidence was only discovered upon Sonny Swartz's arrest, the motion was denied. Sonny Swartz did not testify at trial, and defense counsel objected to the introduction of statements from the planner arguing that the evidence was not properly authenticated under Fed. R. Evid. 901, and that the statements contained therein should not be admitted as a coconspirator statement under Fed. R. Evid. 801(d)(2)(E). The district court's reasons for overruling these objections will be addressed in turn.

The district court's determination that the planner was sufficiently authenticated is reviewed for abuse of discretion. *United States v. Damrah*, 412 F.3d 618, 625 (6th Cir. 2005). "'A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact.'" *United States v. Pugh*, 405 F.3d 390, 397 (6th Cir. 2005) (citation omitted). The authentication requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." FED. R. EVID. 901(a). This requirement may be met based upon the distinctive characteristics of the evidence. FED. R. EVID. 901(b)(4).

In this case, the government claimed that the planner belonged to and contained notes made by Sonny Swartz. The district court explained in denying the motion for new trial, that:

The government offered sufficient evidence to support this claim, including evidence that Sonny Swartz's name and personal contact information are listed in the planner, the planner and calenders were seized from Swartz's vehicle immediately after he exited, entries in the planner and calendars coincided with aspects of Swartz's business, and phone numbers of Swartz's family and known associates were in the planner. Thus, Defendant's argument that the items were not properly authenticated is unsupported.

Shrout has not challenged the factual or legal basis for this finding on appeal, but simply reasserts the contention that the planner was not properly authenticated. We find that the district court did not abuse its discretion in admitting this evidence at trial.

Next, defendant argues that admission of this hearsay evidence violated his Sixth Amendment right to be confronted with the witnesses against him as articulated in *Ohio v. Roberts*, 448 U.S. 56, 66 (1980).[3] That is, the Confrontation Clause permits use of out-of-court statements offered for the truth of the matter asserted in a criminal trial only if the statements fall within a "firmly rooted hearsay exception," or otherwise bear "particularized guarantees of trustworthiness." *United States v. Lopez-Medina*, 461 F.3d 724, 746 (6th Cir. 2006). The coconspirator exception under Fed. R. Evid. 801(d)(2)(E) is one such "firmly rooted hearsay exception." *Bourjaily v. United States*, 483 U.S. 171, 182-84 (1987). Although defendant's objection at trial did not assert a Confrontation Clause violation, we need not decide whether the hearsay objection was sufficient to assert the constitutional claim because we find the statements were properly admitted under Rule 801(d)(2)(E).

A statement is not hearsay if it is offered against a party and is a "statement by a

---

[3]Since coconspirator statements are considered to be nontestimonial, their admissibility is not governed by *Crawford v. Washington*, 541 U.S. 36 (2004). *United States v. Lopez-Medina*, 461 F.3d 724, 746 n.5 (6th Cir. 2006); *United States v. Martinez*, 430 F.3d 317, 328-29 (6th Cir. 2005).

coconspirator of a party during the course and in furtherance of the conspiracy." FED. R. EVID. 801(d)(2)(E). For a statement to be admissible under this exception, the government bears the burden of showing by a preponderance of the evidence that a conspiracy existed, that the defendant was a member of the conspiracy, and that the statement was made in the course and furtherance of the conspiracy. *United States v. Clark*, 18 F.3d 1337, 1341 (6th Cir. 1994). These findings, often referred to as *Enright* findings, must be made by the district court. *United States v. Enright*, 579 F.2d 980, 986-87 (6th Cir. 1978). These determinations present preliminary questions of fact that are reviewed for clear error, while the ultimate decision to admit the evidence under Rule 801(d)(2)(E) is reviewed for abuse of discretion. *United States v. Kone*, 307 F.3d 430, 440 (6th Cir. 2002).

Without contesting the district court's findings on the first two requirements—that a conspiracy existed and that Shrout was a member of that conspiracy—defendant argues on appeal that the government failed to meet its burden of showing that the statements were made during the course and in furtherance of the conspiracy. We have no difficulty concluding that the district court did not clearly err in finding, by a preponderance of the evidence, both that the planner belonged to Swartz, a member of the conspiracy, and that the dated entries made in the planner were made during the course of the conspiracy. These are reasonable inferences under the circumstances, and Shrout has not indicated any basis for concluding otherwise.

"A statement is made in furtherance of a conspiracy if it was intended to promote conspiratorial objectives; it need not actually further the conspiracy." *United States v.*

*Carter*, 14 F.3d 1150, 1155 (6th Cir. 1994). This requirement may be met in a number of ways, not just, as Shrout points out, when the statements are made to apprise a coconspirator of the progress of the conspiracy, to induce his continued participation, or to allay his fears. *United States v. Rios*, 842 F.2d 868, 874 (6th Cir. 1988).

Shrout argues that since the statements indicate only that someone loaned him money, there was insufficient basis to infer that the statements were made in furtherance of the conspiracy. On the contrary, the evidence more than allowed an inference that Swartz was funding the vote-buying activities of Shrout and the other coconspirators. Indeed, the out-of-court statements in the planner reflecting loans to Shrout on specific dates, such as "May 1, loan to Walter Shrout $5000," are like the drug ledger we found to contain statements made during the course and in furtherance of the drug conspiracy in *United States v. Breitkreutz*, 977 F.2d 214, 219 (6th Cir. 1992). The district court did not abuse its discretion in admitting the challenged statements from the planner under Fed. R. Evid. 801(d)(2)(E), and therefore admission of those statements did not violate defendant's right to confrontation.

**AFFIRMED.**