**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Richard Dennis KANDIK,**
**Defendant–Appellant.**

**No. 80–1220.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 10, 1980.

Decided Dec. 15, 1980.

Bernardo P. Velasco, Asst. Federal Public Defender, Tucson, Ariz., for defendant–appellant.

James E. Mueller, Asst. U. S. Atty., Tucson, Ariz., for plaintiff–appellee.

Before GOODWIN and SCHROEDER, Circuit Judges and JAMESON,* District Judge.

JAMESON, District Judge:

Kandik was convicted on four counts of counterfeiting. Two related issues are raised on appeal: (1) whether Kandik is entitled to a hearing to enable him to show that certain testimony at trial was tainted by an illegal search and therefore used in violation of the court's suppression order; and (2) whether Kandik in fact met his burden of showing that the live testimony was tainted. We affirm.

From April to July, 1978, Kandik conspired with Alvin Taber and Michael Norman to print counterfeit money. Kandik lived in Taber's guest house. In June, 1978, Kandik and Taber equipped the house for printing counterfeit currency. In July Kandik took a week off from his job to print the money.

A year later federal investigators arrested Norman, who negotiated a plea agreement with prosecutors. Taber also cooperated with the investigation in exchange for leniency. During a meeting with the prosecutor and Secret Service investigators, Taber related a conversation with Kandik, in which Kandik had said that he planned to burn the counterfeiting plates and other material at his cabin on Mount Lemon. Later he reported to Taber that he had done so.

Kandik and his attorney met with the prosecutor and a Secret Service agent to discuss a possible plea agreement. While insisting that he was innocent, Kandik said that he might be able to produce the remains of the plates. After the plea negotiations broke down, the prosecutor used the information obtained during the plea negotiations to obtain a search warrant for a cabin owned by Kandik's parents on Mount Lemon. The ensuing search produced pieces of cloth, paper, and an aluminum plate used to print the counterfeit bills.

The district court suppressed the evidence because the warrant was based on information obtained during plea discussions, in violation of Fed.R.Crim.P. 11(e)(6). The court ruled further that the seized evidence could not be used for impeachment or any other purpose at trial.

The Government offered no evidence of the search or its fruits at trial. Four witnesses testified, however, about the plates and the cabin. Taber, who did not know where the cabin was located, related his conversations with Kandik concerning the burning of the plates. Laura Lopez, a co-worker, testified that Kandik had spoken of his cabin on Mount Lemon. Debbie Mabarek, Kandik's ex–wife, testified that Kandik's parents owned a cabin on the mountain. Finally, Forest Service employee Marquita McCrone verified ownership of the cabin from government records.

Kandik twice sought a hearing before trial to force the Government to prove the testimony of these four witnesses was not tainted by the illegal search. The court denied the motions.

■ The Government must prove that particular evidence or testimony is not fruit of the poisonous tree, but a defendant has the initial burden of establishing a factual nexus between the illegality and the challenged evidence. *United States v. Allard*, 600 F.2d 1301, 1305 (9 Cir. 1979); *United States v. Cella*, 568 F.2d 1266, 1284–85 (9 Cir. 1977). Kandik complains that the court's refusal of his request for a hearing denied him the opportunity to establish a connection between the illegal search and the witnesses' testimony. Kandik relies on *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) as supporting his entitlement to a hearing. That reliance is misplaced. *Alderman* does not automatically require a hearing to determine the existence or absence of taint, and it is distinguishable from this case.

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

In *Alderman*, the Court held that an adversary hearing was needed to sift through a large volume of complex factual material, which was itself the fruit of an illegal wiretap search, to determine the existence of taint. 394 U.S. at 184, 89 S.Ct. at 972. In the instant case, the illegally seized evidence is known to all parties, and any connection between it and the challenged testimony would be readily traceable. A hearing in this case is unnecessary, and would not help Kandik establish the taint.

We find that Kandik did not establish any connection or taint between the illegally seized evidence and the testimony in question.

Kandik's counsel conceded during oral argument that Taber's testimony was not tainted by the search. The Government knew about Kandik's statements to Taber before the plea negotiations. Kandik argues, however, that the testimony of the other three witnesses was tainted because they might not have been located but for the search.

We find no merit in the contention. The Government used these witnesses to corroborate Taber's testimony. Their testimony lends credibility to Taber's statements concerning his conversations with Kandik, but it does not refer to the plates or the search that led to their seizure. Even without the search it is likely the Government would have used Taber's testimony and sought the same three corroborative witnesses. It would therefore be admissible under the "inevitable discovery" doctrine suggested in *Brewer v. Williams*, 430 U.S. 387, 406–07 n.12, 97 S.Ct. 1232, 1243–44 n.12, 51 L.Ed.2d 424 (1977), and recognized by this court in *United States v. Schmidt*, 573 F.2d 1057, 1065–66 n.9 (9 Cir. 1978).

More important, even assuming the search may have been a factor in the investigation and subsequent location of the witnesses, the challenged testimony was so attenuated as to dissipate any taint. The Supreme Court in *United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978), rejected a *per se* rule of admission or exclusion and held that in determining whether the exclusionary rule with its deterrent purpose should be applied, its benefits should be balanced against its costs. The Court recognized that the cost of excluding live–witness testimony is often greater than the loss of physical evidence, so "a closer, more direct link" between the illegality and the live testimony is required. *Id.* at 278, 98 S.Ct. at 1061. We find no close link between the illegal search and the testimony of Lopez, Mabarek and McCrone. They testified without coercion, and the fruits of the search did not induce their testimony. Exclusion of their testimony would not advance the purposes of the exclusionary rule, especially since they were not potential defendants. See *Ceccolini, supra*, at 276–77, 98 S.Ct. at 1060; *Cella, supra*, at 1285–86; *United States v. Cales*, 493 F.2d 1215, 1215–16 (9 Cir. 1974).

AFFIRMED.