**F I L E D**

PUBLISH

**OCT 25 2001**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff - Appellant,

vs.

FRANK LAWRENCE DeLUCA,

      Defendant - Appellee.

No. 00-1442

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 00-CR-69-N)

Sean Connelly (James R. Boma, Thomas L. Strickland and Richard T. Spriggs, on briefs), Office of the US Attorney, Denver, Colorado, for Plaintiff - Appellant.

Laura B. Alms (and Jody C. Reuler, on the brief), Denver, Colorado, for Defendant - Appellee.

Before SEYMOUR, McWILLIAMS, and KELLY, Circuit Judges.

KELLY, Circuit Judge.

    The government appeals from the district court's order suppressing methamphetamine that gave rise to a conspiracy charge against Defendant-Appellee, Frank Lawrence DeLuca.  We have jurisdiction pursuant to 18 U.S.C. § 3731, and we reverse.

## Background

Mr. DeLuca was indicted on three drug-related counts: one count of conspiracy to possess more than 50 grams of actual methamphetamine with intent to distribute, 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A); and two counts of distribution of methamphetamine, 21 U.S.C. §§ 841(a)(1), (b)(1)(C). App. at 9-10. The two distribution charges arose out of events which occurred in April 1999, and are not at issue here. Id. at 10. The events that gave rise to the conspiracy charge, however, are pertinent. In June 1999, during a New Mexico traffic stop, a state police officer seized a quantity of methamphetamine from the trunk of a car in which Mr. DeLuca was a passenger. On Mr. DeLuca's motion, id. at 12, the district court suppressed the methamphetamine as "the fruit of the illegal detention" of the car and its occupants. Id. at 78, 85.

On June 19, 1999, a New Mexico police officer was participating in a driver's license and registration checkpoint on Interstate Highway 40 in New Mexico when he stopped the car in which Mr. DeLuca was a passenger. The car had three occupants: Tineke Meyers, the driver; William Boyer, the backseat passenger and owner of the car; and Mr. DeLuca, the defendant and front-seat passenger. Upon the officer's request, Ms. Meyers produced a valid driver's license, and Mr. Boyer produced the vehicle registration. Id. at 73. As Mr. Boyer handed the officer the registration, the officer "observed that his right hand was

visibly shaking and all occupants in the vehicle appeared to be nervous." Id. at 19 (statement of probable cause).

The officer inquired about the group's travel plans. Ms. Meyer said they had left Colorado Springs, Colorado, the previous day to go to Phoenix, Arizona, and that now they were on their way back to Colorado Springs. A second officer, having arrived on the scene and overhearing the conversation, asked if their luggage was in the trunk. Ms. Meyer replied that they had no luggage and that there was nothing in the trunk. At this point, the first officer asked Ms. Meyer if she would pull over on to the highway shoulder and Ms. Meyer did so. The first officer had not returned Ms. Meyer's license or the vehicle registration. Id. at 73-74.

Next, the first officer asked Ms. Meyer if he could search the trunk and Ms. Meyer consented. Upon opening the trunk, the officer "smelled an odd odor which [he] did not recognize," and "observed small bundles of clothing, various tools and an open bag of ground coffee beans." Id. at 19. The first officer obtained Ms. Meyer's consent to run a K-9 dog unit over the vehicle. Two dogs independently alerted to the left side of the trunk. After searching that area of the trunk, the first officer discovered a "green, leafy substance in a small plastic baggy, located in the portion of the trunk designated for storage of the tire jack," and, directly under that, "a 12 inch long object completely covered in white

athletic type tape." Id. All of the occupants of the car denied knowledge of either item. The first officer arrested all three occupants of the vehicle for possession of narcotics. When the first officer slit open the taped package, he saw a "white substance," which he believed to be "meth or a cocaine derivative." Id.

Ruling on Mr. DeLuca's motion to suppress the taped package, the district court found that the initial stop of the car as part of a highway safety program was "defensible." Id. at 75. However, the court concluded that the stop became "indefensible" after Ms. Meyer produced a valid driver's license and Mr. Boyer produced a valid registration. Id. at 76. The court found that Mr. Boyer's shaking hand and the apparent nervousness of the car's occupants was not enough to justify their continued detention and that the officer's failure to return the license and registration precluded the detention from becoming consensual. Id. The court concluded that "[s]ince [the officer] lacked any particularized and objective basis for attributing criminal activity to any occupant of the car, the continued detention and his further inquiries were illegal." Id. at 77. The court went on to hold that there was "a direct, palpable link between the detention of the car's occupants and discovery of the package in the car's trunk" and, therefore, that the methamphetamine must be suppressed as the "fruit of the illegal detention." Id. at 79-80, 85.

## Discussion

On appeal, the government concedes two points: (1) although the initial traffic stop was legal, the stop became illegal after Ms. Meyer had produced a valid driver's license and Mr. Boyer had produced a valid vehicle registration; and (2) the officer's failure to return the license and vehicle registration precluded the stop from becoming a consensual encounter. Aplt. Br. at 8. Therefore, the only issue we are confronted with on appeal is whether the methamphetamine found in the car's trunk must be suppressed as "fruit" of Mr. DeLuca's illegal detention.

"In reviewing the district court's grant of a suppression motion, we accept the district court's factual findings absent clear error and review de novo the district court's determination of reasonableness under the Fourth Amendment to suppress the contraband evidence." United States v. Olguin-Rivera, 168 F.3d 1203, 1204 (10th Cir. 1999). We also review de novo the issue of whether a defendant has standing to challenge a search. United States v. Eylicio-Montoya, 70 F.3d 1158, 1161 (10th Cir. 1995). In this case, the government only challenges the district court's legal determination that the methamphetamine was the "fruit" of Mr. DeLuca's illegal detention. Aplt. Br. at 6; see also App. at 73 (district court order stating that both parties rested upon the state police officer's statement of probable cause to inform the court of the relevant facts).

Fourth Amendment rights are personal, and, therefore, "a defendant cannot claim a violation of his Fourth Amendment rights based only on the introduction of evidence procured through an illegal search and seizure of a third person's property or premises." United States v. Erwin, 875 F.2d 268, 270 (10th Cir. 1989) (citations omitted). Based on this principle, we have held that without a possessory or property interest in the vehicle searched, "passengers lack standing to challenge vehicle searches." Eylicio-Montoya, 70 F.3d at 1162 (citations omitted). However, "[t]his court has repeatedly recognized that although a defendant may lack the requisite possessory or ownership interest in a vehicle to directly challenge a search of that vehicle, the defendant may nonetheless contest the lawfulness of his own detention and seek to suppress evidence found in the vehicle as the fruit of the [defendant's] illegal detention." United States v. Nava-Ramirez, 210 F.3d 1128 (10th Cir.), cert. denied, 121 S. Ct. 206 (2000) (citations omitted). As Mr. DeLuca concedes, he did not have a possessory or property interest in the vehicle in which the methamphetamine was found, and therefore lacks standing to directly challenge the search of the vehicle. Aplee. Br. at 9. Mr. DeLuca does have standing, however, to contest the lawfulness of his own detention and to seek to suppress the methamphetamine as the fruit or derivative evidence of that illegal detention.

To suppress evidence as the fruit of his unlawful detention, Mr. DeLuca

must make two showings: (1) "that the detention did violate his Fourth Amendment rights"; and (2) that there is "a factual nexus between the illegality and the challenged evidence." Nava-Ramirez, 210 F.3d at 1131 (internal quotations and citation omitted). "Only if the defendant has made these two showings must the government prove that the evidence sought to be suppressed is not 'fruit of the poisonous tree,' either by demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct." Id. (citations omitted). In this case, the government concedes that Mr. DeLuca's continued detention was unlawful once the car's occupants had produced a valid driver's license and vehicle registration. Aplt. Br. at 8. Therefore, Mr. DeLuca must show that there is a factual nexus between his unlawful detention and the discovery of the methamphetamine.

In order to show such a factual nexus, "[a]t a minimum, [Mr. DeLuca] must adduce evidence at the suppression hearing showing the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct." Nava-Ramirez, 210 F.3d at 1131 (footnote and citation omitted). Mr. DeLuca has not met this "but for" test, as we find that this case falls squarely within the holding of Nava-Ramirez. Mr. Nava-Ramirez was driving a car in which the owner of the vehicle, Steven Wald, was a passenger. A

state police officer stopped the vehicle for having a cracked windshield. Mr. Nava-Ramirez produced a valid driver's license and Mr. Wald produced a valid vehicle registration, but the state police officer continued to detain the men based primarily on the smell of "burnt methamphetamine emanating from the vehicle's interior" and the officer's observations that both of the car's occupants were nervous and that Mr. Wald's eyes were "bloodshot and glassy." Id. at 1130. The officer obtained the men's consent to search the interior of the car. Before searching the passenger compartment, the officer conducted a pat-down search of both men and found two pipes in Mr. Wald's pockets. The search of the passenger compartment of the car turned up nothing, but when the officer searched the trunk of the vehicle, he found two packages of methamphetamine. Both Mr. Nava-Ramirez and Mr. Wald were arrested. The district court denied Mr. Nava-Ramirez's motion to suppress the methamphetamine. Id.

On appeal, Mr. Nava-Ramirez argued that the methamphetamine should have been suppressed as fruit of his own unlawful detention. We assumed, without deciding, that the detention was unlawful, but held that Mr. Nava-Ramirez had failed to demonstrate a factual nexus between his detention and the methamphetamine discovered in the trunk. We stated that "Nava-Ramirez put on no evidence to demonstrate that had he, at some point after the passenger compartment search was completed but before the trunk search began, requested

- 8 -

permission or otherwise attempted to depart the scene, he would have been able to leave in Wald's car." Id. at 1131. Without some proof, we could not "simply speculate that Wald would have given Nava-Ramirez permission to take his car," id., and we affirmed the district court's denial of Mr. Nava-Ramirez's suppression motion.

Just as in Nava-Ramirez, Mr. DeLuca has failed to show that had he requested to leave the scene of the traffic stop, he would have been able to do so in Mr. Boyer's car.[1] Therefore, without any evidence to the contrary, we must assume that regardless of Mr. DeLuca's presence, the car and its owner would have continued to be detained and the officer would still have found the methamphetamine. See, e.g., United States v. Carter, 14 F.3d 1150, 1154 (6th Cir. 1994) ("Suppose that at the time of the driver's arrest the police had summoned a taxi cab for [the defendant passenger] and told him he was free to leave. The marijuana would still have been discovered, because it was located in a van owned and controlled by [the driver] (who was not going anywhere until his vehicle had been searched) and not in a vehicle controlled by [the defendant

_____

[1] In his brief on appeal, Mr. DeLuca "queries whether, in certain circumstances, such as those in the present matter, certain requests for permission or attempts to depart the scene would not lead to an independent probable cause for detainment . . . ." Aplee. Br. at 19 n.2. We do not render advisory opinions and, therefore, must wait until we are confronted with a case with the above facts to address the issue.

passenger].").  The fact that in <u>Nava-Ramirez</u>, Mr. Nava-Ramirez was the driver of the vehicle, while in the present case, Mr. DeLuca was simply a passenger, is immaterial.  Like Mr. DeLuca, Mr. Nava-Ramirez had no possessory or ownership interest in the vehicle searched and could only seek to have the evidence suppressed as fruit of his own allegedly unlawful detention.

In this case, the district court incorrectly held that the government must prove that the methamphetamine "was not the fruit of the illegal detention of <u>the car and its occupants</u>."  App. at 79 (emphasis added).  The district court found that the factual nexus requirement was satisfied because, without the illegal detention of the car and <u>all</u> its occupants, the methamphetamine would never have been found.  <u>Id.</u> at 85 ("<u>Nava-Ramirez</u> . . . requires only a 'but for' factual nexus between the illegal detention of the car and its occupants . . . and the evidence subsequently discovered.  I have found that nexus clearly-established here.").  <u>Nava-Ramirez</u> requires a more focused inquiry.  In order to meet his initial burden under <u>Nava-Ramirez</u> and demonstrate the required factual nexus, Mr. DeLuca must show that the methamphetamine would never have been found but for <u>his</u>, and only his, unlawful detention.  To apply <u>Nava-Ramirez</u> as the district court did would effectively allow Mr. DeLuca to assert the Fourth Amendment rights of third parties (<u>i.e.</u>, Ms. Meyer and Mr. Boyer).  The government need only show that the methamphetamine was not the fruit of the illegal detention of Mr.

- 10 -

DeLuca. It is not required to make this showing in relation to the car and all its occupants.

At oral argument, Mr. DeLuca argued that he has met the factual nexus requirement because one of the reasons that the arresting officer gave in his statement of probable cause for continuing to detain the vehicle and its occupants was that all the occupants "appeared to be nervous." App. at 19. In effect, Mr. DeLuca is arguing that "but for" his apparent nervousness, the officer would not have continued to detain the vehicle and the methamphetamine would not have been discovered. We reject this argument as insufficient to meet the factual nexus requirement under the facts of this case.

The dissent suggests that Nava-Ramirez (1) does not control the outcome of this case because that case affirmed the denial of a motion to suppress and this case involves the grant of a motion to suppress, (2) improperly imposed an inapposite standing analysis before misapplying the "fruit of the poisonous" tree analysis, and (3) conflicts with established precedent. The dissent also argues that we have employed the wrong standard of review (de novo), specifically that the district court's findings concerning "fruit of the poisonous tree" must be evaluated for clear error.

Beginning with the standard of review, it is entirely appropriate to apply a de novo standard of review because the government's argument on appeal is that

Mr. DeLuca lacks standing to challenge the discovery of the methamphetamine in the trunk. Aplt. Br. at 1, 6, 7. The government correctly argues that Mr. DeLuca had no reasonable expectation of privacy in the search of the trunk, and the district court erred in concluding that because a passenger may challenge his own detention incident to a traffic stop, any evidence seized thereafter is necessarily linked to that detention without first satisfying the requirements of Nava-Ramirez. Given the admitted facts, this is a purely legal argument and de novo review is appropriate. The district court's findings/conclusions are not insulated from review merely because we are reviewing its grant of a suppression motion. First, while we may defer to the district court's findings of historical fact concerning a factual nexus, it is particularly inappropriate to defer to its ultimate conclusion given its overinclusive view of what constitutes a factual nexus and the lack of evidence suggesting such a nexus. Second, whether under the rubric of a factual nexus (standing), or a preliminary showing that the evidence sought to be suppressed is tainted by the unlawful detention, this link cannot be bypassed merely because we review a district court's decision on derivative evidence claims under the clearly erroneous standard.

We do not disagree that a passenger has standing to raise a Fourth Amendment violation to a stop and detention, and may seek to have suppressed evidence found in the vehicle that may be fruit of the violation. But that does not

obviate the requirement that the passenger adduce facts tending to show that the evidence sought to be suppressed is a product of his or her unlawful detention. Just as Fourth Amendment rights are personal and a defendant has the burden to demonstrate that his rights have been violated, United States v. Gama-Bastidas, 142 F.3d 1233, 1238 (10th Cir. 1998) (internal quotations, citations omitted), he must also demonstrate a causal link between the violation and the contraband. See Rakas v. Illinois, 439 U.S. 128, 139-40 (1978) (substantive Fourth Amendment law incorporates standing doctrines of injury in fact and assertion of one's own legal rights). The Supreme Court has been reluctant to treat the interests of all those legitimately in a vehicle alike, id. at 148, and surely the derivative evidence doctrine is not independent of standing requirements.

Stated another way, in a derivative evidence claim, the defendant must make a threshold showing that the challenged evidence is tainted by the earlier Fourth Amendment violation. See Alderman v. United States, 394 U.S. 165, 183 (1969). The dissent's suggestion that the link be abandoned in traffic stop and detention cases where the car and its occupants are stopped and detained and a subsequent search occurs shortly after any Fourth Amendment violation ignores the rationale for standing–that the victim of the unlawful search or seizure assert his own rights, even if the case involves derivative evidence. Nor does it comport with the derivative evidence doctrine–in this case, the passenger's unlawful

- 13 -

detention was not even a "but for" cause of the subsequent search, let alone an exploitation of that unlawful detention.  See Lewis v. Texas, 664 S.W.2d 345, 348-49 (Tx. Ct. Crim. App. 1984) ("Once the initial legal detention became an illegal one, the [passenger's] presence was irrelevant to the officer's decision to search.  Put another way, [the officer] could have let [the passenger] leave without hampering his ability to search the car.  Thus, in no way was [the passenger's] detention necessary to perform the search.").

The fact that some of our past cases involving multiple occupants in a vehicle have not employed the factual nexus test does not somehow invalidate the analysis–standing arguments are not jurisdictional and may be waived.  United States v. Dewitt, 946 F.2d 1497, 1499 (10th Cir. 1991).  Moreover, Nava-Ramirez does not stand alone–it is fully supported by United States v. Carter, 14 F.3d 1150 (11th Cir. 1994), in an analogous factual setting.[2]  Finally, even were we inclined to overrule Nava-Ramirez (which we are not), we are bound by it.  See In re

_____

[2] Each case turns on its own evidence–unlike one treatise, we do not believe that standing on a passenger's derivative evidence claim arising from an unlawful detention is unattainable, just that no facts were adduced in this case demonstrating an adequate link between the detention and the challenged evidence given the other occupants of the vehicle.  See 3 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, Criminal Procedure § 9.1(d) at 333 & 333-34 n.110 (2nd ed. 1999) (suggesting that where a passenger challenges his unlawful detention the subsequent search of the vehicle cannot be viewed as fruit of that detention); Idaho v. Babb, 29 P.3d 406, 409-10 (Id. 2001) (case remanded for defendant to prove that "but for" an allegedly unlawful arrest, the methamphetamine would not have been found).

Smith, 10 F.3d 723, 724 (10th Cir. 1993) (citations omitted) (stating three-judge panel is bound by opinion of prior panel "absent en banc consideration or a superseding contrary decision by the Supreme Court").

Therefore, we REVERSE the district court's order granting the motion to suppress and REMAND to the district court for further proceedings.

*No. 00-1442, United States v. DeLuca*

**SEYMOUR**, Circuit Judge, dissenting

I am unable to join the majority's opinion in this case. I am not persuaded that *United States v. Nava-Ramirez*, 210 F.3d 1128 (10th Cir. 2000), directly controls the outcome here. Furthermore, I have serious doubts about the accuracy of the "fruit of the poisonous tree" analysis conducted by the court in *Nava-Ramirez*. To the extent *Nava-Ramirez* modifies the "factual nexus" that must be established by the defendant in a motion to suppress evidence, the opinion departs from our established precedent. Finally, the majority applies the wrong standard of review to the district court's opinion. With all due respect, I dissent.

### I.

On the evening of June 19, 1999, Frank Lawrence DeLuca was a passenger in a car driven by Tineke Meyer. The owner of the car, William Boyer, was also a passenger in the car. As the car proceeded down Interstate Highway 40 in New Mexico, it was stopped by New Mexico police officer Paul Mendoza, pursuant to a "drivers [sic] license and registration checkpoint." App. at 73. Officer Mendoza asked Ms. Meyer to produce a driver's license and vehicle registration. Ms. Meyer gave the officer a valid driver's license and Mr. Boyer presented the officer with a valid registration certificate. Officer Mendoza stated that he

- 1 -

"observed that [Mr. Boyer's] right hand was visibly shaking and all occupants of the vehicle appeared to be nervous." *Id.*

Without returning the driver's license and registration, Officer Mendoza asked the car's occupants where they were traveling to and from. Ms. Meyer stated they had been in Colorado Springs, Colorado, had traveled to Phoenix, Arizona, and were now returning to Colorado Springs. Another officer asked Ms. Meyer if there was luggage in the trunk. She responded that they had no luggage in the trunk. Officer Mendoza instructed Ms. Meyer to "pull over onto the shoulder area of the roadway," which she did. *Id.* at 74. Officer Mendoza then asked Ms. Meyer for permission to search the trunk of the car, which she gave. "The officer 'smelled an odd odor which I did not recognize' and observed small bundles of clothing, tools, and an open bag of ground coffee beans." *Id.* Officer Mendoza obtained Ms. Meyer's permission to allow a drug-sniffing dog to inspect the car. The dog alerted to the left side of the trunk. A second dog independently alerted to the same area. Officer Mendoza searched that area of the trunk, finding "a small plastic baggy containing a green leafy substance" and "a foot-long object wrapped in white athletic tape." *Id.* Upon slitting open the object, Officer Mendoza discovered "a white material suspected to be methamphetamine or cocaine." *Id.*

Mr. DeLuca sought to have the evidence suppressed in the government's

case against him, and the district court granted his motion. The government has appealed this pre-trial determination.

The majority correctly observes that "in reviewing the district court's grant of a suppression motion, we accept the district court's factual findings absent clear error and review de novo the district court's determination of reasonableness under the Fourth Amendment to suppress the contraband evidence." Maj. op. at 5, *citing United States v. Olguin-Rivera*, 168 F.3d 1203, 1204 (10th Cir. 1999). This court reviews "de novo the issue of whether a defendant has standing to challenge a search." *Id.*, *citing United States v. Eylicio-Montoya*, 70 F.3d 1158, 1161 (10th Cir. 1995).

The majority errs, however, in concluding that "in this case, the government only challenges the district court's *legal* determination that the methamphetamine was the 'fruit' of Mr. DeLuca's illegal detention." *Id.* (emphasis added). While the only issue presented to us is indeed whether the drugs seized were "fruit" of the officer's illegal conduct, the district court's determination of that matter is not a legal one. As this court has previously recognized, because taint analysis is "fact-intensive, we review the district court's finding under a clearly erroneous standard." *United States v. King*, 990 F.2d 1552, 1563 (10th Cir. 1993) (citations omitted); *see also Brown v. Illinois*, 422 U.S. 590, 603-04 (1975) (holding that whether illegally seized evidence is

sufficiently purged of its taint to be admissible "must be answered on the facts of each case" and listing factors to be considered). Thus, whether Mr. DeLuca met his burden of establishing a "factual nexus" between his illegal detention and the seized evidence is an inherently factual determination on which the district court made specific findings. The majority ignores those findings, as I will discuss more fully below.

## II.

In order to place the majority's opinion and the district court's factual findings in the context of our prior precedent, I have re-examined the first principles of Fourth Amendment fruits analysis. The seminal case in this area is *Wong Sun v. United States*, 371 U.S. 471 (1963). *Wong Sun* provides the basic framework analyzing the admissibility of evidence illegally seized by the police. As the Court there noted:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light *but for* the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the *primary illegality*, the evidence to which instant objection is made has been come at by *exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint*.

*Id.* at 487-488 (emphasis added) (internal quotations and citations omitted). *Wong Sun* makes clear that once a defendant has established the *primary* illegality

in the case, here the illegal detention of the vehicle and its occupants, the next question is what evidence would not have been discovered "but for the illegal actions of the police." *Id.* A court must then examine whether the evidence is so tainted by that illegality that it must be suppressed. The taint analysis first set forth in *Wong Sun* remains the essential analysis for determining whether evidence obtained by unconstitutional police action is admissible.

Pursuant to the analytical framework of *Wong Sun*, we have held in vehicle stop cases that once the occupants of the vehicle have established that their detention, arrest or stop was illegal, "as a general rule any evidence obtained as a result of their detention must be excluded as fruit of the poisonous tree." *United States v. Santana-Garcia*, 264 F.3d 1188 (10th Cir. 2001) (referring to both driver and passenger) (*citing United States v. Villa-Chaparro*, 115 F.3d 797, 800 n.1 (10th Cir. 1997)). This result obtains unless the government can convince the factfinder that the evidence is sufficiently purged of its primary taint on the basis of one of three grounds. *Nava-Ramirez*, 210 F.3d at 1131. It may do so by "demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct." *Id.* If the government can establish any of these three grounds, the evidence is deemed to be purged of its primary taint and may be admitted.

In *King*, 990 F.2d 1552, we discussed the factors a court must consider in determining whether illegally seized evidence has been purged of the primary taint in a vehicular stop case. We stated there that "several factors guide our inquiry including the temporal proximity of the Fourth Amendment violation and [the discovery] of the evidence, any intervening circumstances, and the purpose and flagrancy of the official misconduct." *Id.* at 1563-64 (internal quotations and citations omitted.) The burden of proof remains squarely with the government to demonstrate that the evidence is purged of its taint such that it should be admitted. *Nava-Ramirez*, 210 F.3d at 1131.

In addition to the fruits analysis, other principles provide the legal background for disposition of the case at hand. This court has consistently held "it is beyond dispute that a vehicle's driver may challenge his traffic stop." *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1483 (10th Cir. 1994), *citing United States v. Erwin*, 875 F.2d 268, 270 (10th Cir. 1989). In *Erwin*, we were faced with whether a passenger riding in a vehicle that is illegally stopped by the police has standing to challenge the illegal stop. *Erwin*, 875 F.2d at 270. We concluded that the Fourth Amendment is implicated when a passenger is stopped as surely as it is when a driver is stopped because the passenger has a right to object to the seizure of his person. In so holding, we said:

> [W]e see no reason why a person's Fourth Amendment interests in challenging his own seizure should be diminished merely because he was a

passenger, and not the driver, when the stop occurred. Drivers and passengers have similar interests in seeing that their persons remain free from unreasonable seizure. Furthermore, we reject any notion that a vehicular stop detains for Fourth Amendment purposes *only* the driver simply because the passenger may be free to depart.

*Id.* (internal citations and quotations omitted). We relied on *Berkemer v. McCarty*, 468 U.S. 420, 436 (1984), where the Court said:

It must be acknowledged at the outset that a traffic stop significantly curtails the "freedom of action" of the driver and the passengers, if any, of the detained vehicle . . . Certainly few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so.

*See Erwin*, 875 F.2d at 270. We recognized in *Erwin* that a passenger cannot *directly* challenge an illegal search of a car he does not own because he has no legitimate expectation of privacy in the vehicle. *Id.* at 270-71 (*citing Rakas v. Illinois*, 439 U.S. 128, 134 (1978)). Nevertheless, the law is clear that a passenger has the same interest as the driver in challenging the illegal seizure of his person when that seizure is effected by a vehicular stop.

In *United States v. Eylicio-Montoya*, 70 F.3d 1158, 1164 (10th Cir. 1995), we held that just as a passenger may challenge the illegal stop of a car in which he is riding as a seizure of his person, so may he challenge an illegal arrest stemming from a vehicular stop. We stated there that "stops, detentions, and arrests all constitute seizures under the Fourth Amendment and differ primarily in the degree to which they restrict the individual's freedom of movement." *Id.* We

further noted that:

> A passenger's personal interest in challenging an arrest on Fourth Amendment grounds is just as significant as her interest in challenging a stop or an investigative detention. Accordingly, we conclude that a passenger has standing to challenge a constitutionally improper traffic stop, detention, or arrest on Fourth Amendment grounds even though, when the seizure occurs, she has no possessory or ownership interest in either the vehicle in which she is riding or in its contents. *A passenger does not relinquish her Fourth Amendment interest in protecting herself from unlawful seizures merely because she chooses to ride in a vehicle in which she has no possessory or proprietary interest.*

*Id.* (emphasis added) (citations omitted). In addition, a passenger may succeed in suppressing all evidence discovered in the vehicle which would not have been discovered but for the primary illegality, *i.e.*, the illegal detention of the vehicle and its passengers, unless the government can establish the taint has been purged. *See*, *e.g.*, *King*, 990 F.2d 1552 (evidence found in car suppressed in favor of driver and passenger).

**III.**

The precedent undergirding our Fourth Amendment vehicular stop cases must be applied to the district court's opinion in this case. The district court began by finding that the detention of Mr. DeLuca was illegal. The court cited our prior precedent which has consistently held that "[a]n officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation." *United States v. Gonzalez-Lerma*, 14 F.3d

1479, 1483 (10th Cir. 1994), *citing United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir. 1988) (citations omitted). However, once the driver has produced valid documentation, "he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning." *Id.* The district court concluded on the facts of this case that "the detention of the car's three occupants became indefensible after Ms. Meyer, the driver, produced a valid driver's license and Mr. Boyer, the owner, produced a valid registration." App. at 76. The court dismissed the government's argument that the officer had reasonable suspicion to further detain the vehicle because of "Mr. Boyer's shaking hand and the apparent nervousness of all three occupants," noting "[t]here can be numerous physical and mental causes of a shaking hand, including the stress of an encounter with an officer of the law, and such quivering is entirely consistent with innocence and lack of knowledge of a crime." *Id.* at 76-77.

Concluding Mr. DeLuca had established the primary illegality, wrongful detention of the vehicle and its occupants, the court turned to examining whether the alleged methamphetamine found in the trunk of the car should be suppressed as the fruit of Mr. DeLuca's unlawful detention. Citing our holdings in *Erwin* and *Eylicio-Montoya*, the district court rejected the government's argument that Mr. DeLuca did not have standing to challenge the search. The court concluded that "the illegal detention of the automobile and its three passengers requires

suppression of evidence seized in the subsequent search if the evidence can be characterized as the fruit of the illegal detention." *Id.* at 78. After correctly noting that "[t]he Government bears the ultimate burden of proving that the evidence seized here was not the fruit of the illegal detention of the car and its occupants," the court determined that "the Government has wholly failed to discharge that burden here." *Id.* at 79. The court found:

> To the contrary, Officer Mendoza's "Statement of Probable Cause" accepted by both parties adequately demonstrates *a direct, palpable link between the detention of the car's occupants and discovery of the package in the car's trunk.* The questions concerning itinerary and luggage, the "request" to pull the car to the side of the roadway, the request to search the trunk, the ensuing request to do a canine sniff, the canine alert and consequent intensified, narrowed search, and the discovery of the alleged methamphetamine all followed in *a direct, unbroken, and natural sequence from the illegal decision to retain the license and registration and continue interrogation.* ***But for*** *that decision, I infer, the car and all occupants would have proceeded on their way, and the drugs would never have been discovered.* The Government has not articulated or proved any circumstance which would suggest that the package of suspected drugs was not the fruit of the illegal detention. It has not, for example, pointed to an independent source which would have led to discovery of the package, and it has not shown that the package would inevitably have been discovered notwithstanding the illegality.

App. at 79-80 (citations omitted) (emphasis added). I can find no clear error in the district court's factual findings in this regard, as they are all tied to the Statement of Probable Cause, which was the only evidence introduced by either Mr. DeLuca or the government. *See id.* at 19.

The district court went on to "reject any suggestion that co-defendant's

- 10 -

consent to search the vehicle somehow dissipated the illegal detention of all occupants," and correctly applied an attenuation analysis. App. at 81. The court recognized that "the purpose and flagrancy of the officer's unlawful conduct is pertinent to determining whether the trunk search was tainted by the illegal detention." *Id.* (quotations and citations omitted). The court observed that the three passengers and the vehicle in which they rode were illegally detained after they passed through a fixed checkpoint. Noting that "the officer manning the checkpoint apparently had two drug-sniffing dogs readily available," the court stated

> it is certainly a reasonable inference from this record, which the Government has chosen to leave somewhat incomplete, that these officers were conducting standardless and unconstrained stops of every passing car to see whether they could uncover evidence of illegal drug activity. This is a flagrant misuse of such checkpoints.

*Id.* at 82. *See also United States v. Galindo-Gonzales*, 142 F.3d 1217, 1221 (10th Cir. 1998) (*quoting Delaware v. Prouse*, 440 U.S. 648, 661 (1979) ("requiring an individualized, reasonable suspicion as a prerequisite to expanding the scope of detentions at fixed checkpoints protects motorists and passengers from random stops involving the 'kind of standardless and unconstrained discretion [that] is the evil the Court has discerned when in previous cases it has insisted that the discretion of the official in the field be circumscribed, at least to some extent.'"))

The district court rejected the government's attempts to delay the case,

believing that its efforts were "symptomatic of the Government's continued lackadaisical approach to the case and its failure to exhibit adequate diligence or preparation . . . . Its declination to call witnesses, while perhaps motivated by a desire to save resources, resulted in an incomplete factual record." App. at 83.

The court dealt with the government's final argument: "suppression is unjustified, according to the Government, because defendant failed to meet 'his **affirmative** factual burden of showing that he was not free to go at the time of the stop.' (Emphasis in Government's motion.)" *Id.* at 85. Noting the government's reliance on *Nava-Ramirez* for its contention, the district court concluded:

> I do not read *Nava-Ramirez* as imposing such an affirmative burden. If it did so, it would appear to be inconsistent with *Erwin*, 875 F.2d at 270 ("[W]e reject any notion that a vehicular stop detains for Fourth Amendment purposes only the driver because the passenger may be free to depart."). *Nava-Ramirez, rather requires only a "but for" factual nexus between the illegal detention of the car and its occupants (which Erwin treats as the same thing) and the evidence subsequently discovered. I have found that nexus clearly-established here. The illegal detention extended to the car and each occupant and tainted everything that followed.*

*Id.* (emphasis added). Based on the facts it found, the court granted the motion to suppress. *Id.*

## IV.

In its analysis, the majority holds that "this case falls squarely within the

holding of *Nava-Ramirez*." Maj. op. at 7. I disagree with this conclusion and I further question the legitimacy of the *Nava-Ramirez* opinion when considered in light of the precedent of this circuit. To the extent the majority relies on *Nava-Ramirez* for its legal analysis, I disagree with the majority's conclusions in that regard as well.

First, it is significant that *Nava-Ramirez* was a case in which this court affirmed the denial of a suppression motion by the district court, thereby upholding the court's factual findings. In the instant case, to the contrary, we are asked to overturn the district court's grant of the suppression motion. This difference in the procedural posture of *Nava-Ramirez* and the case at hand is an important one. To overturn the district court's suppression of the evidence here, we must hold its explicit factual findings to be "clearly erroneous" in light of the record. *Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998); *Eylicio-Montoya*, 70 F.3d at 1161. Even our belief that we, as the trier of fact, would have come out differently based on the evidentiary record before us is not enough to disturb the district court's findings of fact. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-574 (1985). As long as the "district court's account of the evidence is plausible in light of the record viewed in its entirety," we may not reverse. *Id.* at 574. Likewise, "where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.*

- 13 -

In *Nava-Ramirez*, this court simply affirmed a district court's denial of a motion to suppress, concluding that the court's findings of fact were not clearly erroneous. I would come to the same conclusion based on the evidence here.

I agree with much of the analysis contained in the *Nava-Ramirez* opinion and with the analysis of the majority here up to its reliance on *Nava-Ramirez*. I am convinced that *Nava-Ramirez* failed to follow our precedent governing the fruits analysis as applied to vehicular stops. The point at which I begin to disagree with *Nava-Ramirez* starts at page 1131 of that opinion. The opinion first correctly states that "[t]o successfully suppress evidence as the fruit of an unlawful detention, a defendant must first establish that the detention did violate his Fourth Amendment rights," citing to our opinion in *United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir. 1996). *Nava-Ramirez*, 210 F.3d at 1131. *Nava-Ramirez* next states that "[t]he defendant then bears the burden of demonstrating 'a factual nexus between the illegality and the challenged evidence.'" *Id.* (*quoting United States v. Kandik*, 633 F.2d 1334, 1335 (9th Cir. 1980)). While I agree with this statement as a general principle, I disagree with the characterization in *Nava-Ramirez* of this "second showing" and the application of it to the defendant there, as I will discuss in a moment. The opinion then points out that "only if the defendant has made these two showings must the government prove that the evidence sought to be suppressed is not 'fruit of the poisonous

- 14 -

tree.'" *Id.*

Applying its version of the "factual nexus" portion of the fruits analysis,

the court declared:

> Nava-Ramirez . . . argues that at the moment [the officer] concluded his
> search of the passenger compartment without finding any evidence
> indicating Nava-Ramirez was involved in illegal activity, his continued
> detention became unlawful. Even assuming this argument is correct,
> however, Nava-Ramirez has failed to satisfy his burden of proving a factual
> nexus between his detention and the evidence ultimately discovered in the
> trunk. At a minimum, a defendant must adduce evidence at the suppression
> hearing showing the evidence sought to be suppressed would not have come
> to light but for the government's unconstitutional conduct. *See Shareef*,
> 100 F.3d at 1508. *At the suppression hearing, Nava-Ramirez put on no
> evidence to demonstrate that had he, at some point after the passenger
> compartment search was completed but before the trunk search began,
> requested permission or otherwise attempted to depart the scene, he would
> have been able to leave in Wald's car.* In the absence of some supportive
> proof, this court cannot simply speculate that Wald would have given Nava-
> Ramirez permission to take his car. Because Nava-Ramirez has failed to
> meet his burden of proving a factual nexus between his detention and the
> evidence found in the trunk, this court cannot suppress that evidence as the
> fruit of the purportedly unlawful detention.

*Id.* (emphasis added). This analysis is incorrect under Supreme Court and Tenth

Circuit precedent for four reasons. First, it applied a *heightened* "factual nexus"

test, derived from Ninth Circuit and Supreme Court precedent in factually

complicated cases that is inapposite to simple vehicular stop cases in this circuit.

Second, its analysis of the evidence as fruit of the illegal detention distinguishes

between the driver and the owner of the car, thus confusing standing analysis with

"fruit of the poisonous tree" analysis. Third, it considered the "primary

- 15 -

illegality," *see supra* at 5, to be the search of the car, whereas the primary illegality was in fact the detention of the car and its occupants. Fourth, it forced the defendant to prove that he attempted to prevent the police from illegally searching the car by seeking to remove it from the site, which flies in the face of both our precedent and the policy reasons underlying the exclusionary rule. I will explain each of these points in turn.

First, the case which *Nava-Ramirez* cited for its "factual nexus" test, *Kandik*, is one of a series of Ninth Circuit cases dealing with the "factual nexus" concept and its application in cases with complicated factual circumstances in which the connection between the wrongful conduct of the police and the evidence sought to be suppressed was not readily apparent. In *Nava-Ramirez*, to the contrary, there was a direct and obvious link between the illegal detention of the car and the discovery of contraband in the trunk.

For example, *Kandik*, 633 F.2d 1334, involved a complex conspiracy between three men to print counterfeit money. One of the men was arrested by federal investigators and cooperated with them in exchange for leniency. He implicated Kandik as one of the counterfeiters and told the investigators that Kandik had said he took the counterfeiting equipment to Mount Lemon and burned it. Kandik and his attorney subsequently met with a prosecutor to discuss a plea agreement. While maintaining his innocence, Kandik told prosecutors that

he might be able to procure the counterfeiting plates. Plea negotiations broke down and the prosecutor then used the information gained from Kandik and the other conspirator to obtain a warrant to search Kandik's parents' cabin on Mount Lemon. Various evidence was seized. The district court refused to admit the evidence, viewing it as fruit of the poisonous tree since the warrant was based on information obtained during the plea negotiations. At trial, the government offered no evidence from the search. Instead, it put witnesses on the stand whose testimony, put together, led to the conclusion that Kandik had the plates at a cabin and that Kandik had access to a cabin in Mount Lemon. Kandik filed various motions seeking to force the government to prove that the testimony of these witnesses was not tainted by the illegal search, all of which motions were denied by the district court. This issue was appealed to the Ninth Circuit.

The Ninth Circuit held it was proper for Kandik to be required to establish a "factual nexus" between the illegal search and the evidence presented by the government at trial. *Id.* at 1335. The court concluded that Mr. Kandik did not meet his burden in this regard. *Id.* at 1336. In its analysis, the court noted that "[t]he Government must prove that particular evidence or testimony is not fruit of the poisonous tree, but a defendant has the initial burden of establishing a factual nexus between the illegality and the challenged evidence." *Id.* at 1335. In support of this statement, which is the statement cited in *Nava-Ramirez*, the court

- 17 -

cited *United States v. Allard*, 600 F.2d 1301, 1305 (9th Cir. 1979), and *United States v. Cella*, 568 F.2d 1266, 1284-85 (9th Cir. 1977).

In *Allard*, the Ninth Circuit held that the defendant was required to prove a factual nexus when seeking to suppress evidence seized in an illegal search of a hotel room. The search of the room was warrantless, without probable cause, and without exigent circumstance. *Allard*, 600 F.2d at 1302-03. The district court therefore granted a motion to suppress the evidence. The Ninth Circuit remanded the case for further proceedings to determine whether the defendant had established "the requisite factual nexus between the illegality and the challenged evidence." *Id.* at 1305-06 (citations omitted). In *Cella*, the Ninth Circuit held it appropriate to require a defendant to establish a factual nexus between the initial illegal action of the police and the evidence sought to be suppressed. *Cella*, 568 F.2d at 1270-77. The case involved a complex scheme to misappropriate funds from hospitals. *Id.* at 1269. The defendants argued that if any information illegally obtained "causes the government to intensify its investigation or if it gives an impetus or direction toward what is to be focused on by the government, then all evidence thereafter produced must be suppressed." *Id.* at 1285. The court rejected this argument. *Id.* at 1285-86.

These Ninth Circuit cases are significantly different factually from both *Nava-Ramirez* and the instant case. *Allard* and *Cella* involved ongoing

- 18 -

investigations by police. Defendants and co-conspirators were detained and arrested at different times. In *Cella*, in particular, the issue was whether, given the mounds of evidence obtained by the government, the defendants were entitled to suppress all of that evidence because of one illegal act by the government early in the investigation. Given these factual scenarios, the Ninth Circuit held it was proper to require the defendants in these cases to demonstrate exactly what evidence they believed was tainted and why.

Cases involving complicated factual scenarios in which it is difficult to link particular illegal government conduct to the evidence sought to be suppressed are markedly different from a traffic stop and detention where the car and its occupants are stopped at the same time, detained at the same time, and the search of the car which results in the illegal evidence is conducted shortly after the primary illegality. To impose a heightened factual nexus test like the one imposed by the Ninth Circuit in *Kandik*, *Allard*, and *Cella* on a vehicular stop case is ludicrous. No case in our circuit has ever done so and the Ninth Circuit does not impose this kind of factual nexus test in its own vehicular stop cases.

This Ninth Circuit line of cases is derived from two Supreme Court cases which have mentioned a "factual nexus." Significantly, both cases were wiretap cases. In *Nardone v. United States*, 308 U.S. 338 (1939), the Court stated that:

> the burden is, of course, on the accused in the first instance to prove to the trial court's satisfaction [the primary illegality] . . . Once that is established

- 19 -

. . . the trial judge must give opportunity, however closely confined, to the accused to prove that a substantial portion of the case against him was a fruit of the poisonous tree. This leaves ample opportunity to the Government to convince the trial court that its proof had an independent origin.

*Nardone*, 308 U.S. at 341. Like the Ninth Circuit cases, the Supreme Court was faced with a case where 72 of some 500 intercepted telephone messages in an ongoing investigation by the government into alcohol smuggling by organized crime constituted much of the proof against the defendant and the police had committed an illegal wiretap early into the investigation. *See United States v. Nardone*, 90 F.2d 630, 630-31 (2d Cir. 1937). Additionally, the Court was concerned that "claims that taint attaches to any portion of the Government's case must satisfy the trial court with their solidity and not be merely a means of eliciting what is in the Government's possession before its submission to the jury." *Nardone*, 308 U.S. at 342. *Alderman v. United States*, 394 U.S. 165 (1969), was another wiretap case. There the Court noted "[t]he United States concedes that when an illegal search has come to light, it has the ultimate burden of persuasion to show that its evidence is untainted. But at the same time petitioners acknowledge that they must go forward with specific evidence demonstrating taint." *Id.* at 183. In both of these wiretap cases, the Court was concerned with the ability of the defendants to have much of the evidence against them suppressed because of the government's initial illegal action. In order to

keep the defendants from automatically excluding such evidence, the Court held the defendants had to specifically allege taint and demonstrate which pieces of evidence were tainted.  Significantly, the Court allowed the defendants access to the government's records in order to meet this burden.  *Id.*

Again, as is true in the Ninth Circuit cases, this type of "factual nexus" test has never been applied outside of the narrow context of wiretap cases or other cases in which copious amounts of evidence gained through long, complex investigations have been jeopardized by the government's initial illegality.  We have found no Supreme Court case applying such a test to a vehicular stop case.  Most importantly, our court has simply assumed, as has the Ninth Circuit, that the factual nexus between the illegal conduct and discovery of evidence in the car in such cases is crystal clear given the proximity in time and in location of the events, and the unbroken links between them.  *See*, *e.g.*, *Eylicio-Montoya*, 70 F.3d 1158 (reversing suppression of seized evidence under inevitable discovery analysis); *King*, 990 F.2d at 1563 (affirming suppression of evidence seized illegally in car stop); *United States v. Arvizu*, 232 F.3d 1241, 1252 (9th Cir. 2000) (reversing district court's denial of motion to suppress and stating that "ordinarily, when a car is illegally stopped, the search that follows will be a product of that stop"); *United States v. Millan*, 36 F.3d 886 (9th Cir. 1994) (reversing district court's denial of motion to suppress and stating that "because

the interrogation and search were a direct result of the illegal stop, we hold that all of the evidence must be suppressed").  None of these cases discusses the defendant's burden to show a factual nexus between the illegal detention and the discovery of the contraband in the car because the nexus is readily apparent, as the district court found in the present case.[1]

My second objection to the *Nava-Ramirez* opinion is that it separates the passenger from the driver in analyzing whether the evidence seized from the illegal search of the trunk is fruit of the poisonous tree.  In our precedent, we have not distinguished between driver, owner, and passenger in our analysis of whether the evidence is fruit of the illegality.  Although the owner must be distinguished from the passenger and driver for purposes of determining standing, since only the owner has standing to *directly* challenge the illegal *search* of the vehicle, once the issue of standing has been resolved we have conducted the fruits analysis in the exact same manner with respect to each type of occupant.[2]  We

---

[1]Moreover, the analysis in *Nava-Ramirez* seems to essentially import "inevitable discovery" analysis into the defendant's initial "factual nexus" burden. This forces the defendant to disprove inevitable discovery and does an end run around the government's burden of proof on inevitable discovery.  To the extent that *Nava-Ramirez* suggests such a shift in the burdens of proof, that shift is improper.  *Nardone*, 308 U.S. at 338.

[2]Obviously, a passenger has no standing to directly challenge a search. *Rakas v. Illinois*, 439 U.S. 128, 148-49 (1978) (non-owner driver, when owner is driving in car, has no possessory interest in vehicle and no attendant legitimate expectation of privacy); *see also United States v. Lewis*, 24 F.3d 79, 81 (10th Cir.

(continued...)

- 22 -

have focused on the stop of the vehicle and the unlawful detention or arrest of its occupants as constituting part of the same factual occurrence, and we have not analyzed the detention of the passenger differently from the detention of the driver or the owner. Instead, we have emphasized, as we stated in *Erwin,* that "drivers and passengers have similar interests in seeing that their persons remain free from unreasonable seizure." *Erwin*, 875 F.2d at 270. For example, *United States v. Shareef*, 100 F.3d 1491 (10th Cir. 1996), involved three vehicles, three drivers, and three passengers, all traveling together in a caravan which was stopped by police. In conducting its fruits analysis after finding that the continued detention of five of the six people involved was illegal, the *Shareef* opinion considered the five passengers and drivers the same way. *Shareef* did not separate out passenger, owner, and driver and analyze their connections to the illegally seized evidence individually as does *Nava-Ramirez*. Although the majority in the instant case would require Mr. DeLuca to prove that the evidence

---

<sup>2</sup>(...continued)
1994). However, both drivers and passengers have the right to challenge illegally seized evidence as fruit of their *detention*. *Erwin*, 875 F.2d at 270. Both *Nava-Ramirez*, 210 F.3d at 1131, and the majority recognize this fact, maj. op. at 6.

Perhaps it is confusion about the different standing requirements for owners of cars as opposed to non-owner drivers and passengers which led to the confusing fruits analysis put forth in *Nava-Ramirez*. However, they are two entirely separate and distinct analyses. The fruits analysis should not change simply because of the different standing required, so long as the evidence is being viewed as fruit of the detention, not the search.

was seized as a result "of his and only his" detention, maj. op. at 10, there is no precedent for this test in *Shareef*, *Erwin*, *Eylicio-Montoya*, *King* or any of our other vehicular stop cases, which have uniformly considered passenger, driver, and owner together for purposes of analyzing whether evidence is fruit of the illegal detention of the vehicle and its occupants.

In this regard, particular note should be taken of *King*, 990 F.2d 1552. There, our court (per Judge Baldock) viewed the driver and passenger identically for purposes of upholding suppression of the evidence. In *King*, an officer approached a car stopped near the scene of an accident. The driver of the car had been honking continually at the slow-moving traffic proceeding around the accident site. When the officer reached the car, she saw a loaded firearm tucked under the driver's right thigh. *Id.* at 1555. The driver was ordered out of the car and the passenger was instructed to remain in the car. Disobeying police orders, the passenger left the car. After walking a short distance, she discarded a package, which was immediately seized by the police and found to contain drugs. A search of the car turned up $2700 in cash and an additional $400 was found on the driver's person. On the basis of the illegally seized evidence, both the driver and the passenger were charged with possession with intent to distribute cocaine and cocaine base and with using and carrying a firearm during the commission of a drug trafficking offense. *Id.* at 1556, n.1. The driver was also charged with

possession of a firearm by a felon. *Id.* In our analysis, we affirmed the district court's suppression of the money, gun and drugs as to both defendants, without regard to which defendant possessed the item or whether it was found in the car or outside of it. *Id.* at 1564. We did not analyze each occupant of the vehicle separately as the majority here suggests we do and as the *Nava-Ramirez* court did.

My third objection to *Nava-Ramirez* is that it focuses on the "primary illegality"[3] as being the illegal search of the car and not the illegal detention of the car and its occupants. Significantly, *Nava-Ramirez* cites *Shareef* in support of its statement that "at a minimum, a defendant must adduce evidence at the suppression hearing showing the evidence sought to be suppressed would not have come to light *but for* the government's unconstitutional conduct." *Nava-Ramirez*, 210 F.3d at 1131 (emphasis added). However, *Shareef* focuses on the detention of the three vehicles and their occupants in that case as the unconstitutional police conduct and examines whether the illegally seized evidence is the fruit of that detention. In contrast, *Nava-Ramirez* improperly focuses on the search of the car as the primary illegality and thereby concludes that the defendant must demonstrate he attempted to leave in the car. *Shareef* nowhere asks the question *Nava-Ramirez* does: Did the passenger attempt to remove the car from the scene

---

[3]The Court in *Wong Sun* refers to the connection between the "primary illegality" and the allegedly tainted evidence. *See* 371 U.S. at 487-88; *supra* at 5.

- 25 -

so that it would not be searched? Rather, *Shareef* asks: Was the evidence seized as a result of the illegal detention of the car and its occupants? But for *that* illegal detention, would the evidence have been found? *Shareef*, like all our other vehicle stop cases, presumes the existence of a factual nexus between the illegal detention of the cars and their occupants and the illegally seized evidence because that "but for" connection (the factual nexus) is unquestionably demonstrated by the facts: but for the illegal detention of the vehicle and its occupants, the vehicle would have left the scene and the contraband would not have been discovered.

My final objection to *Nava-Ramirez* is that it requires a non-owner driver to try to prevent the police from illegally searching the car he is driving. In other words, such a driver must attempt to remove the car from the scene in order to stop it from being illegally searched before he is entitled to have evidence discovered in the trunk suppressed. *Nava-Ramirez* implies that *Shareef* supports this requirement. Although our court concluded in *Shareef* that the evidence was admissible because the three vehicles would have in any event been *legally* impounded at the request of the rental company, the case does not bear the weight that *Nava-Ramirez* places upon it. Unlike *Nava-Ramirez*, *Shareef* does not support the proposition that because the *illegal* search would have happened anyway, the evidence is admissible. This is a critical distinction because the Supreme Court and this court have consistently held that in order for the

government to prove the primary taint has been dissipated, it must establish attenuation, independent source, or inevitable discovery through *lawful* means.

In *Nix v. Williams*, 104 S.Ct. 2501 (1984), for example, the Court held that "if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered **by lawful means** . . . then the deterrence rationale has so little basis that the evidence should be received." *Id.* at 2509 (emphasis added). Conversely, if the evidence is discovered by *unlawful* means, the exclusionary rule should apply since its underlying rationale is to deter unlawful police conduct. Under *Nava-Ramirez*, however, the defendant is forced to prove, as part of his initial showing, that he attempted to stop the police from *illegally* searching the car. Not only is this requirement contrary to the precedent contained in cases such as *Nix*, it undermines the rationale for the exclusionary rule in the taint context: "the knowledge gained by the government's own wrong cannot be used by it." *Wong Sun*, 371 U.S. at 485, citing *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920). The exclusionary rule exists "in order to make effective the fundamental constitutional guarantees of sanctity of the home and inviolability of the person." *Id.* at 484 (citations omitted). To allow the government to introduce illegally seized evidence unless the defendant establishes he could have prevented the officer's inevitable but unlawful discovery of that same evidence defies common sense in addition to being inconsistent with precedent. *See*, *e.g.*,

*Shareef*, 100 F.3d at 1508 (suppression of evidence reversed where "vehicles would have been impounded and search as a result of a *lawful* investigation that was underway before any of the defendants was illegally seized") (emphasis added)); *Eylicio-Montoya*, 70 F.3d at 1165 (inevitable discovery doctrine applied where illegally seized evidence would have been observed by customs agents "during the course of a *lawful Terry* stop.") (emphasis added)); *United States v. Romero*, 692 F.2d 699, 704 (10th Cir. 1982) (illegal pat down irrelevant where marijuana packet "clearly would have been discovered within a short time through a *lawful* investigation already underway.") (emphasis added)).

Apart from *Nava-Ramirez*'s conflict with existing law, there are good policy reasons to be concerned about its implications. First, to follow the test would vitiate the policy considerations supporting the exclusionary rule in the context of the Fourth Amendment, as discussed above. There is no difference from a policy standpoint between permitting the police to use unconstitutionally seized evidence against an illegally detained passenger and using it against an illegally detained automobile owner. In both instances, the evidence is the fruit of the illegal detention of the vehicle and all of the occupants. Second, the policy considerations for excluding the evidence are particularly strong in the case at hand, where the district court specifically found that the police officers' conduct was flagrantly illegal. Third, the *Nava-Ramirez* test comes dangerously close to creating a right without a remedy, something which is strongly disfavored in

American jurisprudence. We have held in *Erwin*, *Eylicio-Montoya*, and *King*, among other cases, that passengers have the right to challenge their illegal stops, arrests, and detentions as surely as do owner-drivers. Under the heightened *Nava-Ramirez* fruits analysis, however, while a non-owner driver and a passenger may theoretically challenge their illegal detention, they will have no remedy because they will be unable to satisfy the implausible *Nava-Ramirez* requirement that they prove they tried to leave with the vehicle prior to the illegal search.[4]

Such reasoning leads to the result obtained in *United States v. Carter*, 14 F.3d 1150 (6th Cir. 1994), upon which the majority relies. The Sixth Circuit there applied the same flawed analysis set forth in *Nava-Ramirez* and held that illegally seized evidence was admissible against a passenger because he could not have left prior to the car search, and thus would not have been able to remove the thing being searched from the area. *Id.* at 1154.[5] The *Carter* decision is in the minority

---

[4]There are other policy reasons to be concerned about the result in *Nava-Ramirez*. In the already dangerous and charged atmosphere of some vehicular stops, it is unwise to encourage citizens to drive away from a stop or detention they believe to be illegal. Attempting to remove the car from the scene would make this situation even more dangerous for motorists, passersby, and law enforcement officers. It is also unclear under current law whether, if a driver fled the scene of a stop, the police would have independent grounds for reasonable suspicion or probable cause based on flight.

[5]Notably, the passenger in *Carter* was sentenced to 63 months in federal prison on drug charges whereas the government dropped all charges against the driver of the car after the district court granted his motion to suppress. *Carter*, 14 F.3d at 1154.

of other federal circuits addressing whether a passenger must meet a heightened "factual nexus" test in order to suppress illegally seized evidence as fruit of an illegal detention. *See e.g., United States v. Twilley*, 222 F.3d 1092, 1097 (9th Cir. 2000) (suppressing evidence obtained from illegal search of car following illegal stop of non-owner, non-driver passenger); *United States v. Jones*, 234 F.3d 234, 243-244 (5th Cir. 2000) (suppressing evidence obtained through illegal search following illegal detention of non-owner, non-driver passenger.)

In sum, *Nava-Ramirez* constitutes a dramatic departure from the settled precedent of this circuit. It imports into our fruits analysis a heightened "factual nexus" standard from the Ninth Circuit even when the Ninth Circuit has never applied that standard to vehicular stop cases. *Nava-Ramirez* confuses the conceptually distinct standing and "fruit of the poisonous tree" analyses, thereby analyzing the driver and the owner of the car differently. It also improperly focuses on the search as the primary illegality instead of focusing on the illegal detention of the car and its occupants. Finally, it sets forth a test to be met by defendants that is unworkable and implausible. Each of these holdings in *Nava-Ramirez* goes against the grain of well-established precedent in this circuit and in the Supreme Court.

As *Nava-Ramirez* conflicts in several regards with our precedent in its imposition of a new fruits analysis, our earlier cases control the outcome of the instant case. "When faced with an intra-circuit conflict, a panel should follow

earlier, settled precedent over a subsequent deviation therefrom." *United States v. Espinoza*, 244 F.3d 1234, 1244 (10th Cir. 2001), *citing Haynes v. Williams*, 88 F.3d 898, 900 & n.4 (10th Cir. 1996) (other citations and quotations omitted). I would confine *Nava-Ramirez* to its narrow facts and disregard the portion of the opinion that is in conflict with our earlier cases. I would employ the fruits analysis set forth in those earlier cases without importing the heightened "factual nexus" test set forth in *Nava-Ramirez*. In so doing, I would affirm the ruling of the district court. Thus, I respectfully dissent.